# NEAL *v.* UNITED STATES

No. 94–9088.  Argued December 4, 1995—Decided January 22, 1996

KENNEDY, J., delivered the opinion for a unanimous Court.

*Donald Thomas Bergerson,* by appointment of the Court, *post,* p. 963, argued the cause for petitioner. With him on the briefs was *Michael J. Costello.*

*Paul R. Q. Wolfson* argued the cause for the United States. With him on the brief were *Solicitor General Days, Acting Assistant Attorney General Keeney,* and *Deputy Solicitor General Dreeben.**

JUSTICE KENNEDY delivered the opinion of the Court.

The policy of sentencing drug offenders based on the amount of drugs involved, straightforward enough in its simplest formulation, gives rise to complexities, requiring us again to address the methods for calculating the weight of LSD sold by a drug trafficker. We reject petitioner's contention that the revised system for determining LSD amounts under the United States Sentencing Guidelines requires reconsideration of the method used to determine

---

*\*Peter Goldberger* and *Barbara E. Bergman* filed a brief for the National Association of Criminal Defense Lawyers et al. as *amici curiae* urging reversal.

statutory minimum sentences, and we adhere to our former decision on the subject.

I

LSD (lysergic acid diethylamide) is such a powerful narcotic that the average dose contains only 0.05 milligrams of the pure drug. The per-dose amount is so minute that in most instances LSD is transferred to a carrier medium and sold at retail by the dose, not by weight. In the typical case, pure LSD is dissolved in alcohol or other solvent, and the resulting solution is applied to paper or gelatin. The solvent evaporates; the LSD remains. The dealer cuts the paper or gel into single-dose squares for sale on the street. Users ingest the LSD by swallowing or licking the squares or drinking a beverage into which the squares have been mixed.

In 1988, petitioner Meirl Neal was arrested for selling 11,456 doses of LSD on blotter paper. The combined weight of the LSD and the paper was 109.51 grams. Following a guilty plea in the United States District Court for the Central District of Illinois, petitioner was convicted of one count of possession of LSD with intent to distribute it, in violation of 21 U. S. C. § 841, and one count of conspiracy to possess LSD with intent to distribute it, in violation of 21 U. S. C. § 846. At the initial sentencing, the method for determining the weight of the illegal mixture or substance was the same under the Guidelines and the statute directing minimum sentences. The determinative amount was the whole weight of the blotter paper containing the drug. See United States Sentencing Commission, Guidelines Manual § 2D1.1, Drug Quantity Table, n. * (Nov. 1987) (1987 USSG). Because the total weight of the LSD and blotter paper exceeded 10 grams, the District Court found petitioner subject to the 10-year mandatory minimum sentence specified in 21 U. S. C. § 841(b)(1)(A)(v). Under the version of the Sentencing Guidelines then in effect, the indicated sentence was even greater than the statutory minimum: The quantity of the

drugs and petitioner's prior convictions resulted in a Guidelines sentencing range of 188 to 235 months' imprisonment, even after an adjustment for petitioner's acceptance of responsibility for the crime. The District Court imposed concurrent sentences of 192 months' imprisonment on each count, to be followed by five years of supervised release.

In November 1993, the United States Sentencing Commission revised the method of calculating the weight of LSD in the Sentencing Guidelines. United States Sentencing Commission, Guidelines Manual, App. C., Amdt. 488 (Nov. 1995) (1995 USSG). Departing from its former approach of weighing the entire mixture or substance containing LSD, the amended Guideline instructed courts to give each dose of LSD on a carrier medium a constructive or presumed weight of 0.4 milligrams. *Id.*, § 2D1.1(c), n. (H). The revised Guideline was retroactive, *id.*, App. C, Amdt. 502, and one month later petitioner filed a motion to modify his sentence, see 18 U. S. C. § 3582(c)(2). He contended that the weight of the LSD attributable to him under the amended Guidelines was 4.58 grams (11,456 doses × 0.4 milligrams). For that amount, the applicable sentencing range under the Guidelines would be 70 to 87 months of imprisonment. The 10-year statutory minimum of § 841(b)(1)(A)(v) was no bar to a reduced sentence, petitioner argued, because the presumptive-weight method of the Guidelines should also control the mandatory minimum calculation. The 4.58 grams attributable to him by the Guidelines method would be well short of the 10 grams necessitating a 10-year minimum sentence.

The District Court, following our recent decision in *Chapman* v. *United States*, 500 U. S. 453 (1991), ruled that the blotter paper must be weighed in determining whether petitioner crossed the 10-gram threshold of § 841(b)(1)(A)(v). It held that the mandatory minimum sentence of 10 years still applied to petitioner notwithstanding the sentencing range under the Guidelines. Since the Guidelines no longer au-

thorized a sentence above the statutory minimum, the District Court reduced petitioner's sentence to 120 months on each count.

On appeal, the Court of Appeals for the Seventh Circuit, sitting en banc, agreed with the District Court that a dual system now prevails in calculating LSD weights in cases like this, and it affirmed petitioner's sentence. 46 F. 3d 1405 (1995).

We granted certiorari to resolve a conflict in the Courts of Appeals over whether the revised Guideline governs the calculation of the weight of LSD for purposes of § 841(b)(1). 515 U. S. 1141 (1995). Compare *United States* v. *Muschik*, 49 F. 3d 512, 518 (CA9 1995) (Guideline method should be used under § 841(b)(1)), cert. pending, No. 95–156, with *United States* v. *Boot*, 25 F. 3d 52, 55 (CA1 1994); *United States* v. *Kinder*, 64 F. 3d 757, 759 (CA2 1995), cert. pending, No. 95–6746; *United States* v. *Hanlin*, 48 F. 3d 121, 124 (CA3 1995); *United States* v. *Pardue*, 36 F. 3d 429, 431 (CA5 1994), cert. denied, 514 U. S. 1113 (1995); *United States* v. *Andress*, 47 F. 3d 839, 840 (CA6 1995) *(per curiam); United States* v. *Stoneking*, 60 F. 3d 399, 402 (CA8 1995) (en banc), cert. pending, No. 95–5410; *United States* v. *Mueller*, 27 F. 3d 494, 496–497 (CA10 1994); *United States* v. *Pope*, 58 F. 3d 1567, 1570 (CA11 1995).

## II

Congress has tried different punishment schemes to combat the menace of drug trafficking. Under the Comprehensive Drug Abuse Prevention and Control Act of 1970, Pub. L. 91–513, 84 Stat. 1236, penalties depended upon whether or not a drug was classified as a narcotic. Chagrined by the resulting sentencing disparities, Congress amended the narcotics laws in 1984 to calculate penalties by the weight of the pure drug involved. See *Chapman*, 500 U. S., at 460–461. Focusing on the pure drug, however, often allowed retail traffickers, who supplied street markets with mixed or diluted drugs ready for consumption, to receive sentences

lighter than what Congress deemed necessary. *Id.*, at 461. In passing the Anti-Drug Abuse Act of 1986, Pub. L. 99–570, 100 Stat. 3207, "Congress adopted a 'market-oriented' approach to punishing drug trafficking, under which the total quantity of what is distributed, rather than the amount of pure drug involved, is used to determine the length of the sentence." *Chapman, supra,* at 461; H. R. Rep. No. 99–845, pt. 1, pp. 11–12, 17 (1986). The Act provided for mandatory minimum sentences based on the weight of "a mixture or substance containing a detectable amount" of various controlled substances, including LSD. 21 U. S. C. §§ 841(b)(1)(A)(i)–(viii) and (B)(i)–(viii). Trafficking in 10 grams or more of a mixture or substance containing LSD earns the offender at least 10 years in prison. § 841(b)(1)(A)(v).

In *Chapman,* we interpreted the provision of the Act that provided a mandatory minimum sentence of five years for trafficking in an LSD "mixture or substance" that weighed one gram or more, see § 841(b)(1)(B)(v). We construed "mixture" and "substance" to have their ordinary meaning, observing that the terms had not been defined in the statute or the Sentencing Guidelines and had no distinctive common-law meaning. 500 U. S., at 461–462. Reasoning that the "LSD is diffused among the fibers of the paper . . . [and] cannot be distinguished from the blotter paper, nor easily separated from it," *id.,* at 462, we held that the actual weight of the blotter paper, with its absorbed LSD, is determinative under the statute, *id.,* at 468.

Petitioner contends that the method approved in *Chapman* is no longer appropriate. In his view, the Commission intended its dose-based method to supplant the actual-weight method used in *Chapman,* and we should not presume that the Commission would recognize two inconsistent schemes for sentencing LSD traffickers, cf. 1995 USSG § 2D1.1, comment., backg'd (stating purposes of making offense levels in § 2D1.1 "proportional to the levels established

by statute" and providing "a logical sentencing structure for drug offenses"). Petitioner concedes, as he must, that the Commission does not have the authority to amend the statute we construed in *Chapman*. He argues, nonetheless, that the Commission is the agency charged with interpretation of penalty statutes and expert in sentencing matters, so its construction of § 841(b)(1) should be given deference. See *Chevron U. S. A. Inc.* v. *Natural Resources Defense Council, Inc.*, 467 U. S. 837 (1984). Congress intended the Commission's rulemaking to respond to judicial decisions in developing a coherent sentencing regime, see *Braxton* v. *United States*, 500 U. S. 344, 348 (1991), so, petitioner contends, deference is appropriate even though the Commission's interpretation postdated *Chapman*. In the alternative, he urges that we reassess *Chapman* in light of the Commission's revised method, which was formed from careful study of retail drug markets. Although *Chapman* established that the weight of the blotter paper must be taken into account, it did not address how courts should do so. The Commission has filled the gap, petitioner maintains, by assigning a constructive weight to the LSD and carrier for each dose.

While acknowledging that the Commission's expertise and the design of the Guidelines may be of potential weight and relevance in other contexts, we conclude that the Commission's choice of an alternative methodology for weighing LSD does not alter our interpretation of the statute in *Chapman*. In any event, principles of *stare decisis* require that we adhere to our earlier decision.

The Commission was born of congressional disenchantment with the vagaries of federal sentencing and of the parole system. *Mistretta* v. *United States*, 488 U. S. 361, 366 (1989) (discussing the Sentencing Reform Act of 1984 and its legislative history). The Commission is directed to "establish sentencing policies and practices for the Federal criminal justice system" that meet congressional goals set forth in 18

U. S. C. § 3553(a)(2) and that, within a regime of individualized sentencing, eliminate unwarranted disparities in punishment of similar defendants who commit similar crimes. See 28 U. S. C. §§ 991(b)(1)(A)–(B). Congress also charged the Commission with the duty to measure and monitor the effectiveness of various sentencing, penal, and correctional practices. § 991(b)(2). In fulfilling its mandate, the Commission has the authority to promulgate, review, and revise binding guidelines to "establish a range of determinate sentences for categories of offenses and defendants according to various specified factors, among others." *Mistretta, supra,* at 368 (internal quotation marks omitted); see 28 U. S. C. §§ 994(a), (b), (c), and (*o*).

Like 21 U. S. C. § 841(b)(1), the Sentencing Guidelines calibrate the punishment of drug traffickers according to the quantity of drugs involved in the offense. From their inception in 1987, the Guidelines have used a detailed Drug Quantity Table as a first step in determining the sentence. See 1995 USSG § 2D1.1(c); 1987 USSG § 2D1.1. The current Table has 17 tiers, each with specified weight ranges for different controlled substances. The weight ranges reflect the Commission's assessment of equivalent culpability among defendants who traffic in different types of drugs, and so all defendants in the same tier are assigned the same base offense level. See 1995 USSG § 2D1.1(c). Once the base offense level is adjusted for other factors, it yields a specific sentencing range depending on the defendant's criminal history. See 1995 USSG § 1B1.1.

Although the mandatory-minimum statute and the Guidelines both turn upon drug quantities, the Commission itself has noted that "mandatory minimums are both structurally and functionally at odds with sentencing guidelines and the goals the guidelines seek to achieve." United States Sentencing Commission, Special Report to Congress: Mandatory Minimum Penalties in the Federal Criminal Justice System 26 (Aug. 1991).

> "The sentencing guidelines system is essentially a system of finely calibrated sentences. For example, as the quantity of drugs increases, there is a proportional increase in the sentence. In marked contrast, the mandatory minimums are essentially a flat, tariff-like approach to sentencing. Whereas guidelines seek a smooth continuum, mandatory minimums result in 'cliffs.' The 'cliffs' that result from mandatory minimums compromise proportionality, a fundamental premise for just punishment, and a primary goal of the Sentencing Reform Act." *Id.*, at iii.

Despite incongruities between the Guidelines and the mandatory sentencing statute, the Commission has sought to make the Guidelines parallel to the scheme of § 841(b)(1) in most instances. See 1995 USSG § 2D1.1, comment., n. 10 ("The Commission has used the sentences provided in, and equivalences derived from, the statute (21 U. S. C. § 841(b)(1)), as the primary basis for the guideline sentences"). As a general rule, the Commission adopts the same approach to weighing drugs as the statute does: "Unless otherwise specified, the weight of a controlled substance set forth in the table refers to the entire weight of any mixture or substance containing a detectable amount of the controlled substance." 1995 USSG § 2D1.1(c), n. (A); see also 1995 USSG § 2D1.1, comment., n. 1 ("'Mixture or substance' as used in this guideline has the same meaning as in 21 U. S. C. § 841, except as expressly provided"); 1987 USSG § 2D1.1, n. * (weighing rule intended to be "[c]onsistent with the provisions of the Anti-Drug Abuse Act"). For most narcotics, there will be no inconsistency in the calculations of drug quantities.

After study of the LSD trade, however, the Commission in 1993 decided it could no longer follow that general rule for LSD offenses and fulfill the statutory directive to promote proportionate sentencing. The Commission determined that "[b]ecause the weights of LSD carrier media vary

widely and typically far exceed the weight of the controlled substance itself, . . . basing offense levels on the entire weight of the LSD and carrier medium would produce unwarranted disparity among offenses involving the same quantity of actual LSD (but different carrier weights), as well as sentences disproportionate to those for other, more dangerous controlled substances, such as PCP." 1995 USSG § 2D1.1, comment., backg'd. To remedy the problem, the Commission revised its Guideline to provide:

> "In the case of LSD on a carrier medium (*e. g.*, a sheet of blotter paper), do not use the weight of the LSD/carrier medium. Instead, treat each dose of LSD on the carrier medium as equal to 0.4 mg of LSD for the purposes of the Drug Quantity Table." 1995 USSG § 2D1.1(c), n. (H).

Under the amendment, a court determines the defendant's base offense level in the Drug Quantity Table by multiplying the number of doses of LSD involved by 0.4 milligrams. The Commission submitted the amendment to Congress, which did not disapprove it in the 180 days allotted by statute. See 28 U. S. C. § 994(p). The amended Guideline took effect on November 1, 1993, and was in force when petitioner was resentenced.

As a threshold matter, it is doubtful that the Commission intended the constructive-weight method of the Guidelines to displace the actual-weight method that *Chapman* requires for statutory minimum sentences. The commentary, which is the authoritative construction of the Guidelines absent plain inconsistency or statutory or constitutional infirmity, *Stinson* v. *United States*, 508 U. S. 36, 38 (1993), states that the new method is to be used "for purposes of determining the base offense level." 1995 USSG § 2D1.1, comment., backg'd. The next paragraph of the commentary repeats the point: The new method will make "the offense level for LSD on a carrier medium . . . [less than] that for the same

number of doses of PCP," "harmonize offense levels for LSD offenses with those for other controlled substances," and "avoid an undue influence of varied carrier weight on the applicable offense level." *Ibid.* This would be obscure language to choose if the Commission were attempting an interpretation of the statute as well as a revision of the Guidelines, for offense levels are not relevant to the mandatory-minimum calculation.

Furthermore, after a catalog of reasons for adopting the dose-based method, the Commission ends with the observation that "[n]onetheless, this approach does not override the applicability of 'mixture or substance' for the purpose of applying any mandatory minimum sentence (*see Chapman;* § 5G1.1(b))." *Ibid.* The citation of *Chapman* in tandem with § 5G1.1(b), which advises that "[w]here a statutorily required minimum sentence is greater than the maximum of the applicable guideline range, the statutorily required minimum sentence shall be the guideline sentence," suggests that the Guidelines calculation is independent of the statutory calculation, and that the statute controls if they conflict. The Commission seems to do no more than acknowledge that, whether or not its method would be preferable for the statute and Guideline alike, it has no authority to override the statute as we have construed it.

Were we, for argument's sake, to adopt petitioner's view that the Commission intended the commentary as an interpretation of § 841(b)(1), and that the last sentence of the commentary states the Commission's view that the dose-based method is consistent with the term "mixture or substance" in the statute, he still would not prevail. The Commission's dose-based method cannot be squared with *Chapman.* The Guideline does take into account some of the weight of the carrier medium (because the average weight of an LSD dose is 0.05 milligrams, 0.35 of the Commission's constructive weight per dose of 0.4 milligrams is attributable to the medium, see 1995 USSG § 2D1.1, comment., backg'd), but we

held in *Chapman* that § 841(b)(1) requires "the entire mixture or substance . . . to be weighed when calculating the sentence." 500 U. S., at 459. In these circumstances, we need not decide what, if any, deference is owed the Commission in order to reject its alleged contrary interpretation. Once we have determined a statute's meaning, we adhere to our ruling under the doctrine of *stare decisis*, and we assess an agency's later interpretation of the statute against that settled law. *Lechmere, Inc.* v. *NLRB*, 502 U. S. 527, 536–537 (1992); *Maislin Industries, U. S., Inc.* v. *Primary Steel, Inc.*, 497 U. S. 116, 131 (1990).

Our reluctance to overturn precedents derives in part from institutional concerns about the relationship of the Judiciary to Congress. One reason that we give great weight to *stare decisis* in the area of statutory construction is that "Congress is free to change this Court's interpretation of its legislation." *Illinois Brick Co.* v. *Illinois*, 431 U. S. 720, 736 (1977). We have overruled our precedents when the intervening development of the law has "removed or weakened the conceptual underpinnings from the prior decision, or where the later law has rendered the decision irreconcilable with competing legal doctrines or policies." *Patterson* v. *McLean Credit Union*, 491 U. S. 164, 173 (1989) (citations omitted). Absent those changes or compelling evidence bearing on Congress' original intent, *NLRB* v. *Longshoremen*, 473 U. S. 61, 84 (1985), our system demands that we adhere to our prior interpretations of statutes. Entrusted within its sphere to make policy judgments, the Commission may abandon its old methods in favor of what it has deemed a more desirable "approach" to calculating LSD quantities, cf. 1995 USSG § 2D1.1, comment., backg'd. We, however, do not have the same latitude to forsake prior interpretations of a statute. True, there may be little in logic to defend the statute's treatment of LSD; it results in significant disparity of punishment meted out to LSD offenders relative to other narcotics traffickers. (Although the number of doses peti-

tioner sold seems high, the quantities of other narcotics a defendant would have to sell to receive a comparable sentence under the statute yield far more doses, see *United States* v. *Marshall*, 908 F. 2d 1312, 1334 (CA7 1990) (Posner, J., dissenting), aff'd *sub nom. Chapman* v. *United States*, 500 U. S. 453 (1991).)  Even so, Congress, not this Court, has the responsibility for revising its statutes.  Were we to alter our statutory interpretations from case to case, Congress would have less reason to exercise its responsibility to correct statutes that are thought to be unwise or unfair.

Like *Chapman*, this case involves a petitioner who sold LSD on blotter paper, the "carrier of choice" involved in "the vast majority of cases."  500 U. S., at 466.  Just as we declined in *Chapman* to entertain "hypothetical cases . . . involving very heavy carriers and very little LSD" in resolving a due process challenge, *ibid.*, we do not address how § 841(b)(1) should be applied in those cases.

We hold that § 841(b)(1) directs a sentencing court to take into account the actual weight of the blotter paper with its absorbed LSD, even though the Sentencing Guidelines require a different method of calculating the weight of an LSD mixture or substance.  The judgment of the Court of Appeals is affirmed.

*It is so ordered.*