UNITED STATES of America,
Plaintiff–Appellee,

v.

Joseph R. POWERS (98–3026); Lamarr
Terrance Wiggins (98–3042),
Defendants–Appellants.

Nos. 98–3026, 98–3042.

United States Court of Appeals,
Sixth Circuit.

Argued and Submitted: March 19, 1999

Decided and Filed: Oct. 15, 1999

J. Matthew Cain, Assistant U.S. Attorney (argued and briefed), Cleveland, Ohio, for Plaintiff–Appellee.

Angelo F. Lonardo (argued and briefed), Yelsky & Lonardo, Cleveland, Ohio, for Defendant–Appellant in No. 98–3026.

John J. Ricotta (briefed), Cleveland, Ohio, for Defendant–Appellant in No. 98–3042.

Before: RYAN, NORRIS, and COLE, Circuit Judges.

## OPINION

RYAN, Circuit Judge.

The defendants, Joseph R. Powers and Lamarr Terrance Wiggins, pleaded guilty to drug offenses for their involvement in a drug distribution ring dealing in D–Lysergic Acid Diethylamide (LSD) in the Cleveland, Ohio, area. There were two other defendants in the case, Jason A. McKittrick and Jonathan P. Williams II, whose appeals are not before this court.

We are asked to decide the correct method for calculating LSD quantities when a defendant is sentenced pursuant to the so-called "safety valve" provision contained in 18 U.S.C. § 3553(f). Having done so, we conclude that the district court erred and so we vacate the sentences and remand to the district court for resentencing.

### I.

The federal government's Drug Enforcement Administration was investigating LSD drug trafficking in Cleveland, Ohio, when a cooperating source agreed to make a purchase on behalf of the agency from one Jason A. McKittrick. After the sale, the DEA learned that McKittrick got the drugs from Jonathan P. Williams II. The DEA arranged for another purchase from McKittrick, and during a subsequent search of McKittrick's home, the agents seized more than 3,000 units of LSD gel tabs.

McKittrick and Williams agreed to cooperate with the DEA in its effort to reach their supplier, whom they identified as defendant Lamarr Terrance Wiggins. The DEA set up another undercover purchase, and as a result, seized a quantity of LSD from Wiggins and from his home. Wiggins, too, agreed to cooperate with the DEA and inform upon his supplier, Joseph R. Powers. Wiggins made a controlled purchase of 2,000 unit doses of LSD from Powers, who turned out to be the "chemist" for the group. A subsequent search of Powers's home revealed additional unit doses of LSD, as well as 5.5 grams of a liquid solution containing LSD. The total amount of the contraband seized in all the arrests and searches was 6,343 unit doses of LSD and 5.5 grams of liquid LSD. The unit doses consisted of LSD mixed with Knox gelatin, resulting in so-called gel tabs. Powers devised a method for removing the LSD from ink blotter paper and mixing it with gelatin to form an allegedly safer, pyramid-shaped gel tab. Apparently the gel tabs also have a longer shelf life. The government laboratory assigned each unit dose a gross weight (LSD plus gelatin) of 3.7 milligrams.

McKittrick, Williams, Powers, and Wiggins were all charged with conspiracy to distribute LSD, in violation of 21 U.S.C. § 846, and possession of LSD with intent to distribute, in violation of 21 U.S.C. § 841(a)(1). All four indictees were convicted upon their respective guilty pleas of the conspiracy offense only. Powers was sentenced to 70 months in confinement and Wiggins to 46 months, and both defendants are before this court on appeal challenging their sentences. They argue that the district court erred as a matter of law in determining the amount of LSD for which each defendant was responsible. The defendants agree with the government regarding the number of units for which they were held responsible, but they disagree as to how each unit should be weighed for purposes of calculating a base offense level. Powers was held responsible for 6,343 unit doses, plus 5.5 grams of a liquid solution containing LSD, and Wiggins for 4,561 unit doses. When weighed in their entirety, according to the formula utilized by the trial court, these amounts exceeded 10 grams, triggering a mandatory minimum sentence of 10 years under 21 U.S.C. § 841(b)(1)(A)(v). Although neither defendant was sentenced to the mandatory minimum, since the court gave Powers the benefit of the so-called "safety valve" provision of 18 U.S.C. § 3553(f) and departed downward when sentencing Wiggins as a result of his substantial assis-

tance to the government, they nevertheless challenged the court's method of calculating the quantity of LSD for which they were responsible. They do so because if the weight of the drug is calculated according to the defendants' preferred formula, their respective sentences, they believe, would be even shorter than the period of confinements actually imposed. Consequently, we take up first the question of how LSD quantities are properly calculated. We will then discuss the operation of the so-called "safety valve" provision of section 3553(f), and finally, answer the ultimate question, whether the district court's calculations were correct.

In sentencing Powers, the court determined the base offense level by using the gross weight of the LSD gel tabs and the LSD in liquid form as seized in the vials from Powers's home for a base offense level of 32. The court subtracted 2 levels under the "safety valve" provision of 18 U.S.C. § 3553(f) and three more levels for acceptance of responsibility, for a total adjusted offense level of 27. This resulted in a sentence range of 70 to 87 months, and as we have said, Powers was sentenced to 70 months' confinement.

The district court calculated Wiggins's base offense level by using the gross weight of the LSD gel tabs (4,561 units × .0037 = 16.8757 grams for a base offense level of 32). The court subtracted three levels for acceptance of responsibility (29) and departed downward six levels for substantial assistance resulting in an adjusted offense level of 23. The result was a guideline range of 46 to 57 months' confinement, and as we have said, Wiggins was sentenced to 46 months.

Before sentencing the defendants, the district court asked for briefing on the proper method for determining the weight of the LSD for which the defendants were responsible and, in due course, determined that using the gross weight of the LSD and the carrier, the gel tab, was the correct method for calculating base offense level.

## II.

■ "A court's factual findings in relation to the application of the Sentencing Guidelines are subject to a deferential 'clearly erroneous' standard of review. Legal conclusions regarding the Guidelines, however, are reviewed *de novo*." *United States v. Latouf*, 132 F.3d 320, 331 (6th Cir.1997) (citations omitted), *cert. denied*, 523 U.S. 1086, 118 S.Ct. 1542, 140 L.Ed.2d 691, *and cert. denied*, 523 U.S. 1086, 118 S.Ct. 1543, 140 L.Ed.2d 691, *and cert. denied*, 523 U.S. 1101, 118 S.Ct. 1572, 140 L.Ed.2d 805, *and cert. denied*, —— U.S. ——, 118 S.Ct. 2307, 141 L.Ed.2d 165 (1998).

## III.

In the unique circumstances of this case the correct calculation for the weight of the LSD attributable to Powers and Wiggins is affected strangely enough by the statute imposing a 10–year mandatory minimum sentence for distributing more than 10 grams of LSD, 21 U.S.C. § 841(b)(1)(A)(v), and the "safety valve" provision of 18 U.S.C. § 3553(f). Therefore, we digress briefly to discuss those provisions.

Under 21 U.S.C. § 841(b)(1)(A)(v), a person convicted of distributing more than 10 grams of "a mixture or substance containing a detectable amount of ... LSD" faces a 10–year mandatory minimum sentence. The Supreme Court has held that the phrase "mixture or substance" requires measuring the weight of the LSD *and* the carrier medium, not just the weight of the LSD, for determining whether the 10 gram amount has been exceeded and the mandatory minimum applies. *See Chapman v. United States*, 500 U.S. 453, 111 S.Ct. 1919, 114 L.Ed.2d 524 (1991). The Court determined that because carrier mediums facilitate distribution, it was rational for Congress to factor the weight of carrier mediums into sentencing. *See id.* at 465–66, 111 S.Ct. 1919. The Court also

noted that for other drugs Congress calculated the weight with regard to pure forms differently than for mixtures containing some detectable amount of the drug. *See id.* at 459, 111 S.Ct. 1919. "Congress knew how to indicate that the weight of the pure drug was to be used to determine the sentence, and did not make that distinction with respect to LSD." *Id.*

Apparently believing the effect of the court's decision in *Chapman* to be unjust, the Sentencing Commission, in 1993, submitted to Congress for its approval a new guideline for calculating the total weight of LSD when it is on a carrier medium. The commission's proposed amendment 488 provided:

> In the case of LSD on a carrier medium (*e.g.*, a sheet of blotter paper), do not use the weight of the LSD/carrier medium. Instead, treat each dose of LSD on the carrier medium as equal to 0.4 mg of LSD for the purposes of the Drug Quantity Table.

U.S.S.G. § 2D1.1(c)(H) (1995). Thus, under amendment 488, for purposes of determining base offense level, the number of doses involved must be multiplied by .4 milligrams, rather than by weighing the units in their entirety; the result, of course, is a much smaller total quantity and a corresponding shorter sentence. The .4 milligram amount was selected to provide uniformity, but also to include some weight for the carrier. *See* U.S.S.G. § 2D1.1, comment. (n.18) (1995). There-fore, the carrier weight is not ignored; the Sentencing Guidelines simply provide a uniform calculation to account for the fact that carriers vary in weight though the amount of LSD per unit remains substantially the same. Congress did not disapprove of the Sentencing Commission's amendment 488, and so it took effect after the 180–day statutory period expired. *See* U.S.S.G. § 2D1.1(c)(H).

After amendment 488 took effect, the Supreme Court revisited the issue of calculating LSD weight for purposes of determining the applicability of the manda-tory minimum sentences in *Neal v. United States*, 516 U.S. 284, 116 S.Ct. 763, 133 L.Ed.2d 709 (1996). In *Neal*, the defendant argued that the .4 milligram methodology adopted in the Sentencing Commission's amendment 488 should be given deference, and that the Court should revisit its *Chapman* decision, in light of the Sentencing Commission's revised method of calculating LSD quantity. The Court was not persuaded. It first explained the traditional process for producing, marketing, and using LSD:

> LSD (lysergic acid diethylamide) is such a powerful narcotic that the average dose contains only 0.05 milligrams of the pure drug. The per-dose amount is so minute that in most instances LSD is transferred to a carrier medium and sold at retail by the dose, not by weight. In the typical case, pure LSD is dissolved in alcohol or other solvent, and the resulting solution is applied to paper or gelatin. The solvent evaporates; the LSD remains. The dealer cuts the paper or gel into single-dose squares for sale on the street. Users ingest the LSD by swallowing or licking the squares or drinking a beverage into which the squares have been mixed.

*Id.* at 286, 116 S.Ct. 763.

The *Neal* Court then stated that it rejected the Sentencing Commission's efforts to nullify the Court's holding in *Chapman*:

> While acknowledging that the Commission's expertise and the design of the Guidelines may be of potential weight and relevance in other contexts, we conclude that the Commission's choice of an alternative methodology for weighing LSD does not alter our interpretation of the statute in *Chapman*. In any event, principles of stare decisis require that we adhere to our earlier decision.

*Id.* at 290, 116 S.Ct. 763.

The *Neal* Court concluded that amendment 488 had no effect on its earlier interpretation in *Chapman*:

We hold that § 841(b)(1) directs a sentencing court to take into account the actual weight of the blotter paper with its absorbed LSD, even though the Sentencing Guidelines require a different method of calculating the weight of an LSD mixture or substance.

*Id.* at 296, 116 S.Ct. 763.

## IV.

We now turn to two sentencing provisions, 18 U.S.C. § 3553(e) & (f), that provide relief from the harshness of mandatory minimum sentence laws for defendants who may, under the facts of a particular case, be appropriate candidates for such relief, one of which has come to be known as the "safety valve."

■ Two exceptions to the mandatory minimum sentence laws are found in 18 U.S.C. § 3553(e) and (f). The first exception is for defendants who provide substantial assistance to law enforcement officers:

(e) **Limited authority to impose a sentence below a statutory minimum.**—Upon motion of the Government, the court shall have the authority to impose a sentence below a level established by statute as minimum sentence so as to reflect a defendant's substantial assistance in the investigation or prosecution of another person who has committed an offense. Such sentence shall be imposed in accordance with the guidelines and policy statements issued by the Sentencing Commission pursuant to section 994 of title 28, United States Code.

18 U.S.C. § 3553(e). This deviation from mandatory minimum sentences is incorporated into the Sentencing Guidelines as well:

Upon motion of the government stating that the defendant has provided substantial assistance in the investigation or prosecution of another person who has committed an offense, the court may depart from the guidelines.

(a) The appropriate reduction shall be determined by the court for reasons stated that may include, but are not limited to, consideration of the following:

(1) the court's evaluation of the significance and usefulness of the defendant's assistance, taking into consideration the government's evaluation of the assistance rendered;

(2) the truthfulness, completeness, and reliability of any information or testimony provided by the defendant;

(3) the nature and extent of the defendant's assistance;

(4) any injury suffered, or any danger or risk of injury to the defendant or his family resulting from his assistance;

(5) the timeliness of the defendant's assistance.

U.S.S.G. § 5K1.1. There is no set amount of departure specified in the statute or the Sentencing Guidelines. Rather, the sentencing judge is given wide latitude in determining the proper departure based on the listed factors and the facts of a particular case.

In 1994, Congress enacted 18 U.S.C. § 3553(f), the "safety valve" provision, which provides still another escape from mandatory minimum sentences for first-time offenders whose information given to the government does not turn out to amount to "substantial assistance":

(f) **Limitation on applicability of statutory minimums in certain cases.**—Notwithstanding any other provision of law, in the case of an offense under section 401, 404, or 406 of the Controlled Substances Act (21 U.S.C. 841, 844, 846) or section 1010 or 1013 of the Controlled Substances Import and Export Act (21 U.S.C. 960, 963), *the court shall impose a sentence pursuant to guidelines promulgated by the United States Sentencing Commission under section 994 of title 28 without regard to any statutory minimum sentence, if the*

court finds at sentencing, after the Government has been afforded the opportunity to make a recommendation, that—

(1) the defendant does not have more than 1 criminal history point, as determined under the sentencing guidelines;

(2) the defendant did not use violence or credible threats of violence or possess a firearm or other dangerous weapon (or induce another participant to do so) in connection with the offense;

(3) the offense did not result in death or serious bodily injury to any person;

(4) the defendant was not an organizer, leader, manager, or supervisor of others in the offense, as determined under the sentencing guidelines and was not engaged in a continuing criminal enterprise, as defined in section 408 of the Controlled Substances Act; and

(5) not later than the time of the sentencing hearing, the defendant has truthfully provided to the Government all information and evidence the defendant has concerning the offense or offenses that were part of the same course of conduct or of a common scheme or plan, but the fact that the defendant has no relevant or useful other information to provide or that the Government is already aware of the information shall not preclude a determination by the court that the defendant has complied with this requirement.

18 U.S.C. § 3553(f) (emphasis added).

The Sentencing Guidelines track this language as well:

In the case of an offense under 21 U.S.C. § 841, § 844, § 846, § 960, or § 963, *the court shall impose a sentence in accordance with the applicable guidelines without regard to any statutory minimum sentence*, if the court finds that the defendant meets the criteria in 18 U.S.C. § 3553(f)(1)–(5) . . . .

U.S.S.G. § 5C1.2 (emphasis added).

If the base offense level is high enough, the Sentencing Guidelines provide further relief:

If the defendant meets the criteria set forth in subdivisions (1)–(5) of § 5C1.2 [ (the safety valve) ] . . . and the offense level determined above is level **26** or greater, decrease by **2** levels.

U.S.S.G. § 2D1.1(b)(6).

### A.

### POWERS

We next address Powers's contention that the district court erred as a matter of law when it followed the mandatory minimum sentence provisions of 21 U.S.C. § 841(b)(1) and used the gross weight method of calculating the quantity of LSD, as articulated in *Chapman* and *Neal*. Powers claims that as a defendant convicted of a violation of 21 U.S.C. § 841 who qualifies for sentencing under the safety valve provision, he should be treated differently than a defendant convicted of a violation of 21 U.S.C. § 841 who does not qualify under the safety valve provision. Specifically, Powers argues, as he did before the district court, that he has a right to be sentenced in accordance with the method articulated in amendment 488, which directs the court not to use the gross weight of the. carrier medium and LSD in calculating the quantity of drugs involved. The district court disagreed with Powers's interpretation and took into account the entire weight of the LSD gel tabs as provided for in 21 U.S.C. § 841(b)(1), as interpreted by *Chapman* and *Neal*.

The government responds here, as it did below, that when a defendant qualifies for the safety valve, any downward departure should be from the offense level calculated from the gross weight of the carrier medium and LSD. The government claims, in

other words, that the total weight of the mixture drives the sentencing calculation.

Contrary to the argument advanced by the government, and adopted by the district court, *Chapman* and *Neal* have nothing to do with the issue before us today. The reason that is so becomes clear when *Neal* is closely examined. In that case, the Court considered whether amendment 488 provided the appropriate method for calculating drug weight for the purpose of determining whether the statutory mandatory minimum sentences are implicated, or whether the Court's earlier decision in *Chapman* requires weighing the entire unit dose. *See Neal,* 516 U.S. at 285–86, 116 S.Ct. 763. The Court held that *Chapman* controls, and absent a contrary directive from Congress, courts are to weigh the entire unit to determine whether the mandatory minimum sentences are triggered. *See id.* at 296, 116 S.Ct. 763.

Thus, the rule announced in *Neal* is narrower than the government suggests. *Neal* directs that for the purpose of determining the applicability of the mandatory minimum sentences, the sentencing court must "take into account the actual weight of the blotter paper with its absorbed LSD, even though the Sentencing Guidelines require a different method of calculating the weight of an LSD mixture or substance." *Id.* at 296, 116 S.Ct. 763.

Thus, *Chapman* and *Neal* require that the gross weight of the LSD and its carrier medium be used to determine whether the defendant is responsible for a sufficient amount of LSD to trigger the mandatory minimum sentences. In this case, the district court found Powers to be eligible for the safety valve. The safety valve provision directs the sentencing court to impose a sentence without regard to any mandatory minimum sentence. As a result, the drug calculation articulated in *Chapman* and *Neal* has no application here.

After a careful review of 21 U.S.C. § 841(b), 18 U.S.C. § 3553(f), and U.S.S.G. § 2D1.1, we conclude that the district court erred in using the gross weight of the gel tabs to determine Powers's base offense level. It is true that gross weight controls when determining whether a defendant must be sentenced in *accordance with a mandatory minimum,* as the Supreme Court has made clear, first in *Chapman,* and again in *Neal.* But Powers was not being sentenced pursuant to a statutory mandatory minimum; his eligibility for the safety valve benefit entitles him to be sentenced without regard to the 10–year mandatory minimum. Therefore, the method for calculating weight applicable to mandatory minimums does not apply here, and the governing law for determining the weight of the LSD for Powers's sentence is amendment 488.

Congress enacted the safety valve statute in 1994, one year after the Sentencing Commission promulgated amendment 488. As we have previously stated: "[I]t is a well settled canon of statutory construction that courts will presume that Congress knew of the prevailing law when it enacted the statute." *United States v. Kassouf,* 144 F.3d 952, 957 (6th Cir.1998). Thus, we presume Congress knew, when it directed courts to sentence defendants qualifying for the safety valve "in accordance with the applicable guidelines without regard to any statutory minimum sentence," that courts would utilize the method in amendment 488 to calculate the quantity of LSD for sentencing purposes.

Therefore, we hold that the district court erred in using the gross weight of the LSD gel tabs when it calculated the quantity of LSD for which Powers was responsible, and we hold that the court should have used the amendment 488 formula.

### B.

### WIGGINS

■ Wiggins argues, first, that he too is entitled to be sentenced in accordance with amendment 488 because he met the re-

quirements of the safety valve statute. The presentence investigative report indicates that Wiggins qualified for sentencing under the safety valve, but the district court did not make a finding on the issue, finding instead that Wiggins was entitled to a downward departure for substantial assistance under 18 U.S.C. § 3553(e) and U.S.S.G. § 5K1.1. Because the district court calculated the LSD quantities using the gross weight of the LSD carrier medium, it was more beneficial for Wiggins to receive a substantial assistance downward departure rather than to be sentenced pursuant to the safety valve. As we have interpreted the Sentencing Guidelines, the safety valve provision, and the mandatory minimum statutes, however, sentencing Wiggins pursuant to the safety valve would result in a more favorable sentence because the total quantity of LSD will be much smaller using the weight calculation formula of amendment 488. Therefore, we vacate Wiggins's sentence and remand to the district court for a determination whether the safety valve applies.

Wiggins also argues that even under the substantial assistance provision found in 18 U.S.C. § 3553(e), he is entitled to be sentenced in accordance with amendment 488. The phrase "without regard to any statutory minimum sentence" takes sentences calculated under the safety valve out of the purview of *Chapman, Neal,* and the gross weight calculation method approved in those cases. The section allowing a downward departure for providing substantial assistance does not contain the phrase, "without regard to any statutory minimum sentence." See 18 U.S.C. § 3553(e). The substantial assistance provision authorizes a sentence below the statutory minimum, but it does not instruct the court to impose a sentence "without regard to" the minimum. However, because the district court left open Wiggins's claim that he qualified for the safety valve, we need not decide whether a downward departure for substantial assistance also requires the court to sentence the defendant in accordance with the method prescribed by amendment

488. Instead, we will vacate Wiggins's sentence and remand to the district court to determine whether Wiggins qualifies for the safety valve. If he does, the court shall sentence him in accordance with the method we have identified today for calculating the weight of LSD unit doses.

## C.

The government makes an additional contention regarding the applicability of amendment 488 to this case. The government claims that there is no carrier or medium here because the LSD is not dropped on some type of paper, but is mixed with gelatin to form a gel tab. This claim was raised in the district court, but the court did not decide the issue, finding instead that amendment 488 did not apply to this case because of the holdings in *Chapman* and *Neal* and the mandatory minimum sentence provisions.

If these LSD gel tabs are not "LSD on a carrier medium," then, by its terms, amendment 488 does not apply, and the sentences should be affirmed for that reason. In any event, that is a matter for the district court to consider in the first instance. Therefore, on remand the district court should determine whether the LSD units in this case are LSD on a carrier medium as that term is used in amendment 488.

## V.

Thus, we **VACATE** the sentences of Powers and Wiggins, and **REMAND** this case to the district court for further proceedings consistent with this opinion.