BLACK, Circuit Judge,
Concurring in the Denial of Rehearing En Banc,
in which CARNES, MARCUS and PRYOR, Circuit Judges, join:
The decisions in United States v. Williams, 435 F.3d 1350 (11th Cir.2006), United States v. Williams, 456 F.3d 1353 (11th Cir.2006), and United States v. Pope, 461 F.3d 1331 (11th Cir.2006), correctly apply United States v. Booker, 543 U.S. 220, 125 S.Ct. 738, 160 L.Ed.2d 621 (2005). The decisions of this Circuit principally distinguish between varying from an advisory Guidelines range based on a case-specific, individualized application of the 18 U.S.C. § 3553(a) factors and varying from an advisory Guidelines range based on a categorical rejection of Congress’s clearly expressed sentencing policy as embedded *836 in the Guidelines and in its statutes. The latter amounts to error, while the former falls within the scope of the district court’s discretion intended by Booker.
The cases of this Circuit cited above all deal with the 100-to-l powder cocaine-to-crack cocaine ratio codified in 21 U.S.C. § 841(b)(1)(B) and embedded in U.S.S.G. § 2D1.1. Our evaluation of these cases naturally requires a thorough understanding of the district court’s role in sentencing post -Booker and the history of the powder-to-crack cocaine ratio before we can apply that understanding to the three cases cited above and to the dissent to the denial of rehearing en banc in this case.
A. The District Court’s Role in Sentencing Postr-Booker
Under our constitutional system, the power to define penalties for federal crimes belongs to Congress, not the judiciary. United States v. Evans, 333 U.S. 483, 486, 68 S.Ct. 634, 636, 92 L.Ed. 823 (1948). The judiciary is not free, generally, to replace a congressional policy with one it deems superior. See, e.g., Neal v. United States, 516 U.S. 284, 116 S.Ct. 763, 133 L.Ed.2d 709 (1996); Chapman v. United States, 500 U.S. 453, 111 S.Ct. 1919, 114 L.Ed.2d 524 (1991).
Congress created the Sentencing Commission under its power to define penalties for federal crimes, using a sentencing guidelines scheme to limit judicial discretion. Of course, Congress’s authority in this area is not without limitation. In United States v. Booker, the Supreme Court held that mandatory sentencing enhancements triggered by judge-found facts violate a defendant’s constitutional right to a trial by jury. 543 U.S. at 244, 125 S.Ct. at 756. To solve the constitutional problem, the Court excised the statutory provision that made the Sentencing Guidelines mandatory, thereby rendering them advisory. Id. at 244-46, 125 S.Ct. at 756-57.
Rendering the Guidelines advisory, however, does not permit unfettered judicial discretion. District courts must still “consult [the] Guidelines and take them into account when sentencing.” Id. at 264, 125 S.Ct. at 767. Moreover, Booker cabined judicial discretion by grounding it in the 18 U.S.C. § 3553(a) factors.[1] Id. at 261, 125 S.Ct. at 766. These factors serve to guide district courts in applying their newly found discretion in individual cases, and to promote greater uniformity in sentencing *837 decisions. Id. at 263-64, 125 S.Ct. at 766-67.
After the Booker decision, sentencing now requires two steps. First, the district court must correctly calculate the applicable sentencing range provided by the Sentencing Guidelines. United States v. McVay, 447 F.3d 1348, 1353 (11th Cir.2006). Second, the district court must determine a reasonable sentence by considering the sentencing range provided by the Guidelines and the § 3553(a) factors. Booker, 543 U.S. at 264, 125 S.Ct. at 767; United States v. Talley, 431 F.3d 784, 786 (11th Cir.2005).
B. The Powder Cocaine-to-Crack Cocaine Ratio
The 100-to-l cocaine-to-crack ratio directly reflects clearly expressed, unambiguous congressional sentencing policy, which Congress embedded in the U.S. Code and is reflected in the Guidelines.[2] Following 21 U.S.C. § 841(b)(1)(B), which Congress enacted in 1986, the Guidelines have always treated 1 gram of crack cocaine the same as 100 grams of powder cocaine. In 1995, the Sentencing Commission proposed amendments that would have abandoned the 100-to-l ratio and equated the sentences for powder cocaine and crack cocaine, while leaving in place the different mandatory minimum sentences that are beyond the Sentencing Commission’s reach. Congress, however, passed, and the President signed, legislation rejecting the amendments. Act of Oct. 30, 1995, Pub. L. 104-38, 109 Stat. 334. In 1997, the Commission again issued a report asking Congress to change the statute or to allow district courts discretion over sentences exceeding the statutory minimum. Congress took no action. United States Sentencing Comm’n, Cocaine and Federal Sentencing Policy (1997). In 2002, the Commission still again recommended that Congress reduce the ratio. United States Sentencing Comm’n, Cocaine and Federal Sentencing Policy (2002). Congress once again took no legislative action.
Arguing the 100-to-l ratio reflected in the Guidelines is not Congress’s policy but the Sentencing Commission’s policy alone ignores Congress’s repeatedly expressed policy judgment. In determining the threshold quantities for the statutory sentencing ranges in 21 U.S.C. § 841(b), Congress decided on a 100-to-l ratio, and the Sentencing Commission followed Congress’s decision to avoid creating sentencing disparities. See §§ 841 (b)(1)(A)(ii), (iii) (applying the same penalties to offenses involving 5 kilograms or more of cocaine powder and offenses involving 50 grams or more of crack cocaine); §§ 841(b)(1)(B)(ii), (iii) (applying the same penalties to offenses involving 500 grams or more of cocaine powder and offenses involving 5 grams or more of crack cocaine).
Congress realized gross sentencing disparities would occur if it accepted the Sentencing Commission’s proposal to equate the drugs for Guidelines purposes. H.R.Rep. No. 104-272, at 4 (1995), as reprinted in 1995 U.S.C.C.A.N. 335, 337. For example, if Congress affirmed the Sentencing Commission’s recommendations and either equated the drugs or used a different ratio in the Guidelines than it used in setting its statutory minimums and máximums, defendants whose offenses involved the same drug but different amounts near the threshold drug quantity for a mandatory minimum sentence would *838 receive markedly different sentences depending on whether the amounts met the threshold for a mandatory minimum or whether the amounts fell just short. Rationally, Congress rejected the Commission’s proposals to equate the two drugs, mandating the 100-to-l ratio. To do otherwise would have undermined its statutory objective of avoiding unwarranted disparities in sentences. Congress ensured its sentencing policy was reflected clearly in the Guidelines.
After Booker, some district courts concluded. they were free to disagree openly with this clearly expressed, unambiguous congressional sentencing policy embedded in the Guidelines and in the U.S. Code. Their sentencing decisions fell into three categories. Some district courts recalculated the Guidelines range with a lower cocaine-to-crack ratio. See United States v. Pho, 433 F.3d 53 (1st Cir.2006). Other district courts calculated the Guidelines range correctly, but then varied from the range based on categorical rejections of the congressional policy behind the cocaine-to-crack ratio without looking at the case-specific, individualized facts pertinent to each defendant. See United States v. Miller, 450 F.3d 270 (7th Cir.2006). Finally, some district courts couched their disagreement with the cocaine-to-crack ratio in the language of the § 3553(a) factors, but did so without indicating any case-specific, individualized reasons a factor required either an upward or downward variance from the advisory Guidelines range. See United States v. Euro, 440 F.3d 625 (4th Cir.2006).
This final category presents the most problems. The determination of the gray area between case-specific, individualized facts and generalized rejections of unambiguous congressional policy will naturally involve an extensive review of the record.
Although each Circuit to address the cocaine-to-crack ratio in the Guidelines has approached the issue differently, in large part because the cases have had different factual and procedural backgrounds, these Circuits have all agreed that a district court is not at liberty to vary from an advisory Guidelines range because of a categorical rejection of congressional sentencing policy regarding the 100-to-l ratio. The Circuits allow variances only for case-specific, individualized reasons grounded in the § 3553(a) factors. United States v. Williams, 456 F.3d 1353 (11th Cir.2006) (holding the district court’s rejection of the 100-to-l drug quantity ratio cannot be justified); United States v. Gunter, 462 F.3d 237, 249 (3d Cir.2006) (suggesting a court categorically rejecting “the 100:1 ratio and substituting] its own ... is verboten”); United States v. Tzep-Mejia, 461 F.3d 522, 527 (5th Cir.2006) (agreeing with the courts that hold a district court judge “is not entitled to base its decision to give a non-Guideline sentence on its disagreement with policy established by Congress ... that traffickers in crack cocaine should receive stiffer sentences than traffickers in powder cocaine”); United States v. Castillo, 460 F.3d 337, 361 (2d Cir.2006) (holding “nothing in § 3553(a) or in Booker ... authorizes district courts to sentence defendants for offenses involving crack cocaine under a ratio different from that provided in the Sentencing Guidelines” other than for “case-specific applications of the § 3553(a) factors”); United States v. McCullough, 457 F.3d 1150, 1172 (10th Cir.2006) (agreeing “it is error for a district court to impose a sentence outside the advisory Guidelines range based upon its own disagreement with the crack cocaine/powder cocaine disparity”); United States v. Brown, 453 F.3d 1024, 1027 (8th Cir.2006) (intimating its agreement “that a district court may not reasonably impose a sentence outside the advisory range based *839 solely on a rejection of the disparate treatment of crack and powder cocaine under the guidelines”); United States v. Miller, 450 F.3d 270, 275 (7th Cir.2006) (holding courts cannot reject the 100-to-l ratio and can only vary from the range for “the specifics of the case at hand”); United States v. Eura, 440 F.3d 625, 633 (4th Cir.2006) (holding a district court errs when it substitutes its own crack cocaine/powder cocaine ratio); United States v. Pho, 433 F.3d 53, 62 (1st Cir.2006) (concluding a “categorical, policy based rejection of the 100:1 ratio, amounted to error as a matter of law”).
These Circuits have distinguished between variances based on case-specific, individualized applications of the § 3553(a) factors and variances based on broad, categorical rejections of congressional policy as reflected in the Guidelines. In Booker, Justice Breyer explained that the “features of the remaining system, while not the system Congress enacted, nonetheless continue to move sentencing in Congress’ preferred direction, helping to avoid excessive sentencing disparities while maintaining flexibility sufficient to individualize sentences where necessary.” Booker, 543 U.S. at 264-65, 125 S.Ct. at 767 (emphasis added). The focus of Booker, therefore, is to allow district judges the flexibility to tailor sentences for individual defendants.
Based on the principle of separation of powers, Supreme Court precedent, our own precedent, and the holdings of our sister circuits, there is a difference between sentencing based on a categorical rejection of Congress’s clearly expressed, unambiguous sentencing policy embedded in the Guidelines and sentencing based on factors specific to the individual defendant and his offense conduct. The former amounts to error, while the latter is the embodiment of the advisory nature of the Guidelines. As discussed above, the determination of the gray area between case-specific, individualized facts and categorical rejections of Congress’s clear sentencing policy will naturally involve an extensive review of the record. The need for an extensive review, however, does not trivialize the important difference between determining a reasonable sentence based on case-specific, individualized facts and usurping Congress’s role in setting sentencing policy.
As the Second Circuit aptly explained, a sentencing court has two roles, each embedded in the text of § 3553(a). Castillo, 460 F.3d at 355-56. Section 3553(a)(2) instructs the district court to consider “the need for the sentence imposed to reflect the seriousness of the offense, while in § 3553(a)(4), the district court is instructed to consider the sentencing range for the applicable category of offense.” Id. at 355 (internal quotation omitted). The language of the two sections highlights the difference between one particular defendant’s offense and the larger category of offense. Id. It is the province of the judiciary to decide the seriousness of a particular defendant’s offense on a ease-by-case, individualized basis, whereas it is the realm of the legislature to make a policy choice about a whole category of offense. Nothing, then, empowers a district court judge to pronounce a broad policy choice rather than a sentence based on the specific facts of a case. Id. at 357.
C. Marcus Williams, Aaron Williams, and Poye
This Circuit has faithfully applied Booker in distinguishing between a variance based on case-specific, individualized applications of the § 3553(a) factors and a variance based on categorical rejections of Congress’s unambiguous sentencing policy embedded in the Guidelines. In United States v. Marcus Williams, the panel af *840 firmed a district court’s sentence, even though the district court varied from the advisory Guidelines range, because the variance was rooted in a case-specific, individualized application of the § 3553(a) factors. In United States v. Aaron Williams, the panel reversed a district court’s sentence because it varied from the advisory Guidelines range due overwhelmingly to a categorical rejection of clearly expressed congressional policy reflected in the Guidelines and did not base its sentence on a case-specific, individualized application of the § 3553(a) factors. Finally, in United States v. Pope, the panel affirmed a district court’s sentence arrived at by applying the 100-to-l ratio and not varying from the Guidelines for policy reasons. As shown above and explained in more detail below, this Circuit’s precedent conforms to Booker, other circuits’ holdings, and the principle of separation of powers.
In United States v. Marcus Williams, a panel of this Court correctly applied Booker and followed the principle of separation of powers. 435 F.3d 1350 (11th Cir.2006). In Marcus Williams, the defendant was convicted of selling $350.00 of crack cocaine. Id. at 1351. After correctly calculating the Guidelines range, “the court turned to whether the circumstances of the particular case and the factors set forth in 18 U.S.C. § 3553 required a sentence within the advisory Guidelines range or allowed a sentence outside that range.” Id. at 1352. The district court believed the Guidelines range did not “promote respect for the law and [was] way out of proportion to the seriousness of the offense and to [Williams’] prior criminal conduct.” Id. at 1353. On appeal, this Court concluded the district court “weighed the factors in § 3553 and took into account Williams’ individual history and the nature of the charge against him when it determined to sentence him to a lower term.” Id. at 1355.
Specifically, this Court concluded this was not a case where the district court imposed a non-Guidelines sentence based on a categorical rejection of Congress’s clearly expressed sentencing policy. Id. Rather, the district court gave case-specific, individualized reasons for sentencing below the advisory range. Accordingly, this Court’s decision in Marcus Williams follows from Booker and the principle of separation of powers by distinguishing between a personal disagreement with Congress’s clearly expressed sentencing policy as embedded in the Guidelines and “specific, valid reasons” for varying from the advisory Guidelines range. Id.
Similarly, in United States v. Aaron Williams, a panel of this Court faithfully applied Booker and followed the principle of separation of powers. 456 F.3d 1353 (11th Cir.2006). At sentencing, the district court expressed its belief that the disparity between the Guidelines’ treatment of crack cocaine offenders compared to powder cocaine offenders “smacks of discrimination” and the difference between the drugs “has never justified the substantial disparity in sentences.” Id. at 1366 (internal quotations omitted). The panel concluded the district court “took into account its personal disagreement with Congress’s judgment as to how much harsher the penalties for crack offenders should be.” Id. Although the district court couched some of its arguments in the § 3553(a) factors, the panel concluded, and it continues to conclude, that the overwhelming reason behind the district court’s sentence was its personal disagreement with and categorical rejection of clearly expressed congressional sentencing policy as embedded in the Guidelines.[3]
*841 This Court held that such considerations are impermissible factors for the district court’s consideration at sentencing. Id. It is important to note that the panel agreed “that a sentence below the Guidelines range in a crack cocaine case may be reasonable, so long as it reflects the individualized case-specific factors in § 3553(a).” Id. at 1369. Again, this Court applied Booker and followed the principle of separation of powers. Aaron Williams is consistent with the precedent of our Circuit and the current holdings of our sister circuits. The panel of this Court distinguished between a district court’s general disagreement with clearly expressed congressional policy embedded in the Guidelines as an invalid reason for varying from an advisory Guidelines range and using individualized and case-specific factors as valid reasons for varying from an advisory Guidelines range.
Finally, in United States v. Pope, this Court applied Booker and followed the precedent of this Court and the principle of separation of powers. 461 F.3d 1331 (11th Cir.2006). In Pope, the defendant was convicted of possession with intent to distribute 50 grams or more of a mixture or substance containing cocaine base (crack cocaine). Id. at 1333. On appeal, Pope argued the district court applied the 100-to-l powder cocaine-to-crack cocaine ratio as mandatory. Id. The panel painstakingly parsed the difference between what is and what is not mandatory post-Booker. Id. at 1335-37. The panel explained the district court must still correctly determine the advisory Guidelines range by using the 100-to-l ratio. Id. at 1337. Yet, the district court must also be aware that the entire Guidelines system is advisory. Id. Again, this Court delineated the difference between varying from a Guidelines range based on a categorical rejection of Congress’s clearly expressed policy embedded in the Guidelines and varying based on the case-specific and individualized facts of a given defendant’s offense.
As the above discussion demonstrates, this Circuit follows Booker faithfully. This Circuit recognizes a district court may vary from an advisory Guidelines range for case-specific, individualized applications of the § 3553(a) factors. This Circuit concludes that varying from an advisory Guidelines range based on a categorical rejection of Congress’s clearly expressed sentencing policy as embedded in the Guidelines and its statutes is error.
D. The Dissent from the Denial of Rehearing En Banc
Judge Barkett’s disagreement with the Aaron Williams decision derives from her review of the record. After reviewing the record, she concludes the district court “methodically evaluated] the sentencing factors set forth in § 3553(a).” While this may be true, the district court must do more than simply couch, in the language of the § 3553(a) factors, its personal and categorical rejection of Congress’s clearly expressed sentencing policy as embedded in the Guidelines. The district court must apply § 3553(a) in a case-specific, individualized manner. The Aaron Williams panel, after an extensive review of the record, *842 concluded, and continues to conclude, that the district court failed to engage in any case-specific, individualized assessment of the § 3553(a) factors. Aaron Williams, 456 F.3d at 1369.
In her dissent, Judge Barkett states that “[u]nder Booker and our governing precedent, a district court may ‘disregard’ the 100:1 craek-to-cocaine ratio if it properly calculates the guidelines range and sentences the defendant based on the individual facts and circumstances of the case” (emphasis added).[4] To the extent “disregard” means vary from the advisory Guidelines range, there is no disagreement between the Aaron Williams decision and Judge Barkett’s statement of the law, and, therefore, no need to review this case en banc. Booker and our precedent allow variances from the advisory Guidelines range based on an individualized and case-specific application of the § 3553(a) factors, while forbidding variances based on categorical rejections of Congress’s clearly expressed, unambiguous sentencing policy embedded in the Guidelines. Judge Bark-ett correctly states the law, and this Court in its decisions correctly applied the law. It seems that Judge Barkett simply disagrees with the Aaron Williams panel’s extensive review of the record.[5]

. The § 3553(a) factors are:
(1) the nature and circumstances of the offense and the history and characteristics of the defendant;
(2) the need for the sentence imposed—
(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
(B) to afford adequate deterrence to criminal conduct;
(C) to protect the public from further crimes of the defendant; and
(D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
(3) the kinds of sentences available;
(4) the kinds of sentence and the sentencing range established for'—
(A) the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines ... issued by the Sentencing Commission ... and ... that ... are in effect on the date the defendant is sentenced ...;
(5) any pertinent policy statement-—
(A) issued by the Sentencing Commission ... and ... that ... is in effect on the date the defendant is sentenced;
(6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and
(7) the need to provide restitution to any victims of the offense.

. This Circuit has consistently upheld the ratio against constitutional challenges. See United States v. Hanna, 153 F.3d 1286 (11th Cir.1998); United States v. King, 972 F.2d 1259 (11th Cir.1992).

. Judge Barkett, in her dissent from the denial of rehearing en banc, states "[t]he majority *841 would tell the district court that they don’t believe its statement that it considered all of the statutory factors.” Just the opposite is true. The panel did believe the statements of the district court and determined the district court used the factors as a vehicle to fashion a sentence based on its categorical rejection of congressional policy embedded in the U.S. Code and clearly reflected in the Guidelines. Instead of applying the factors in a case-specific, individualized fashion to determine a reasonable sentence, as Booker mandates, the district court applied the factors in an unreasonable manner by fashioning a sentence based on its rejection of clearly stated congressional policy.

. Judge Barkett also suggests Aaron Williams is inconsistent with United States v. Eldick, 443 F.3d 783 (11th Cir.2006). In Eldick, a panel of this Court correctly applied Booker and followed the principle of separation of powers. The panel reviewed the district court’s determination that a sentence above the advisory Guidelines range was reasonable. Id. at 790. In so doing, the panel carefully noted that "[t]he district court ... considered the § 3553(a) factors.” Id. at 789. Moreover, the panel noted the particular case-specific, individualized factors that led to the variance. As shown above, Eldick is consistent with this Circuit's current holdings and faithfully follows Booker.

. In making her determination, Judge Barkett goes beyond the text of the Marcus Williams and Aaron Williams opinions and relies heavily on the sentencing hearing transcript in each case. In essence, Judge Barkett is disagreeing with the panel's determination in Aaron Williams that the overwhelming reason for the sentence was the district court’s disagreement with clearly expressed congressional sentencing policy reflected in the Guidelines.