# Order

Michigan Supreme Court
Lansing, Michigan

June 18, 2010

138863-66(87)(91)(94)

ANGLERS OF THE AuSABLE, INC.,
MAYER FAMILY INVESTMENTS, LLC,
and NANCY A. FORCIER TRUST,
      Plaintiffs-Appellants,

v

DEPARTMENT OF ENVIRONMENTAL
QUALITY, DIRECTOR OF THE
DEPARTMENT OF ENVIRONMENTAL
QUALITY, and MERIT ENERGY
COMPANY,
      Defendants-Appellees.
_____/

Marilyn Kelly,
Chief Justice

Michael F. Cavanagh
Elizabeth A. Weaver
Maura D. Corrigan
Robert P. Young, Jr.
Stephen J. Markman
Diane M. Hathaway,
Justices

SC: 138863-138866
COA: 279301, 279306, 280265,
     280266
Otsego CC: 06-011697-CE

On order of the Court, the motion to file a reply brief and the motion to file a supplemental affidavit are GRANTED. The motion to dismiss for mootness is DENIED.

CAVANAGH, J. (*concurring*).

I concur in the order denying the motion for dismissal. This Court originally granted leave to appeal to consider several issues, including whether the state could convey an easement to defendant, Merit Energy Company, that granted the right to discharge water on state-owned land; the proper test for determining the extent to which defendant may discharge water; and whether plaintiffs may pursue a cause of action against the Department of Environmental Quality (DEQ) that challenges the propriety of the DEQ approving and issuing a permit to defendants. *Anglers of the AuSable, Inc v Dep't of Environmental Quality*, 485 Mich 1063 (2010). Defendant now argues that the case is moot because, since the Court granted leave to appeal, defendant has quit-claimed its interest in the easement and claimed that it has abandoned any plans to discharge water into Kolke Creek. I am not convinced.

It is well established that "this Court does not reach moot questions or declare principles or rules of law that have no practical legal effect in the case before us unless the issue is one of public significance that is likely to recur, yet evade judicial review." *Federated Publications, Inc v Lansing*, 467 Mich 98, 112 (2002). An issue is not

necessarily moot, however, "[w]here a party voluntarily ceases an activity challenged as illegal . . . ." *Dep't of Social Services v Emmanuel Baptist Preschool*, 434 Mich 380, 425 (1990), Cavanagh, J., concurring, quoting *United States v W T Grant Co*, 345 US 629, 633 (1953). In such cases, the issue may still be moot only if the party attempting to moot the issue can show that "there is no reasonable expectation that the wrong will be repeated," and "the burden is a heavy one." *Id.*, 345 US at 633. The United States Supreme Court has been particularly wary of finding an issue moot when there remains "a public interest in having the legality of the practices settled," *Grant*, 345 US at 632-633, and when the party seeking to moot the issue is the party who prevailed in the lower court. *City of Erie v Pap's AM*, 529 US 277, 287-288 (2000).[1] In *City of Erie*, the Court cautioned that appellate courts have an "interest in preventing litigants from attempting to manipulate the Court's jurisdiction to insulate a favorable decision from review . . . ." *Id.* at 288.

Under these principles, I do not believe that all of the issues presented in this case are no longer justiciable. Defendant's conduct amounts to nothing more than a "voluntary cessation of allegedly illegal conduct" that does not render the case moot unless the defendant shows that the alleged wrong will not arise again. I cannot see that defendant has met this heavy burden. The legality of the practices addressed by the Court of Appeals remain important public questions.[2] Moreover, because defendant

---

[1] The dissenting statements rely on cases that are inapposite to the factual situation in this case. Justice MARKMAN relies on recitations of the general principles of the mootness doctrine from *People v Richmond*, 486 Mich 29 (2010), and *Federated Publications*. He fails to recognize, however, that these applications of these general principles, no matter how recently decided, do not control the outcome of this case because *Grant* and its progeny identify an exception to those general principles that is specific to cases, like this one, that involve the voluntary cessation of allegedly illegal conduct that has the potential to be resumed. Similarly, the case on which Justice YOUNG heavily relies, *Street R Co of E Saginaw v Wildman*, 58 Mich 286 (1885), is inapplicable because it was predicated on distinct legal principles and also did not involve the voluntary cessation of allegedly illegal conduct. In *Wildman*, the plaintiff sought an injunction to prevent the defendant from moving a building, but the defendant moved the building while the plaintiff's appeal to this Court was pending. 58 Mich at 286-287. This Court therefore dismissed plaintiff's *equitable* action for injunctive relief because, given that the allegedly illegal activity had been *completed*, it would have been useless for the Court to grant the requested injunctive relief. *Id.* at 287-288. Therefore, *Wildman* is inapplicable to this case because the Court's holding was not predicated on whether there was an ongoing legal dispute affecting the parties' rights but instead on the impossibility of granting injunctive relief to prevent an already completed action. In fact, the Court noted that the plaintiff could still pursue an action in law for damages. 58 Mich at 287-288.

[2] For example, defendant prevailed on whether the plaintiffs may challenge the DEQ's decision to issue or deny a permit and whether the state could convey an easement granting riparian rights to state-owned land. Further, the Court of Appeals decision left intact the trial court's injunction, which would permit defendant, upon obtaining riparian rights, to pursue a discharge that

prevailed before the Court of Appeals on several of these important public issues, and did not move to moot the issues until *after* this Court had granted leave to appeal, this Court's interest in preventing defendant from insulating a favorable decision from review is strongly implicated.

Indeed, the facts of this case are strikingly similar to those in *City of Erie*, where the Court rejected the plaintiff's attempt to moot the city's appeal of the plaintiff's successful challenge to a city ordinance, when the plaintiff had prevailed in the lower court and cried mootness only *after* the Court had granted leave to appeal. *City of Erie*, 529 US at 287-288. As in this case, the party seeking to moot the case in *City of Erie* had submitted an affidavit claiming that it would no longer pursue the challenged conduct and presented its voluntary surrender of the property interest necessary to pursue that conduct as evidence of its intent.[3] Yet the *City of Erie* Court reasoned that because the lower court's decision would otherwise remain intact, continuing to affect both parties, and the party could potentially resume the conduct, the issues were not moot.[4] Further, and perhaps most importantly, the Court found the notion that a party

---

constitutes a "reasonable use." The propriety and proper interpretation of that test was another issue on which this Court granted leave to appeal.

These issues are of significant public importance, for, as stated in our Constitution, "[t]he conservation and development of the natural resources of the state are hereby declared to be of paramount public concern in the interest of the health, safety and general welfare of the people." 1963 Const, art 4, § 52.

[3] In *City of Erie*, the plaintiff-respondent was the owner of a nude dancing establishment affected by the challenged city ordinance, and the Pennsylvania Supreme Court had held that the ordinance was unconstitutional. After the United States Supreme Court granted certiorari, the plaintiff-respondent filed an affidavit stating that he had closed his business, sold his property, and never intended to operate a nude dancing establishment again. *City of Erie*, 529 US at 284-288 and 302-303, Scalia, J., concurring.

[4] The *City of Erie* Court reasoned that the plaintiff-respondent could still obtain another building and reopen the establishment, given that it was still incorporated under state law. *City of Erie*, 529 US at 288. Similarly, in this case, defendant could obtain another easement and pursue a discharge that would constitute a reasonable use of the water under the existing test. The *City of Erie* Court also reasoned that both parties had a continuing interest in the litigation because the city could not enforce its ordinance under the lower court's decision, even against other parties, and the plaintiff-respondent still had an interest in preserving the lower court's decision in favor of his rights. *Id.* Justice YOUNG acknowledges that the city's inability to enforce its ordinance against the plaintiff and other inhabitants of the city constituted an ongoing injury and yet concludes that these plaintiffs do not have an ongoing injury. Notably, however, the result of leaving the Court of Appeals decision intact in this case is similar. Plaintiffs' ability to enforce their riparian interests, against defendant and other parties seeking to use Kolke Creek, will continue to be affected by the Court of Appeals conclusions that an easement over state-owned land may grant riparian rights to Kolke Creek and that plaintiffs lack a cause of action to challenge the DEQ's decision to issue a permit to discharge water into Kolke Creek. Further, as

who had prevailed in the lower court could moot a case through its voluntary actions to be repugnant to "[o]ur interest in preventing litigants from attempting to manipulate the Court's jurisdiction to insulate a favorable decision from review." *Id.* at 288. See also, *City News & Novelty, Inc v City of Waukesha*, 531 US 278, 283-284 (2001). Dismissing this case as moot would be equally repugnant to this principle.

In light of the important public interests implicated by the issues before this Court, the parties' continuing interest in having them settled, and this Court's interest in ensuring that litigants are not merely "insulat[ing] a favorable decision from review," I cannot agree with defendant that this case no longer presents any justiciable issues.[5] Therefore, I concur with the denial of defendant's motion to dismiss.

CORRIGAN, J. (*dissenting*).

I concur in Justice YOUNG's legal analysis of the mootness issue. As Justice MARKMAN states, consistent with Justice YOUNG's analysis: "By allowing this appeal to proceed, the Court can only 'reach moot questions or declare principles or rules of law that have no practical legal effect in the case before [it],'" citing *Federated Publications, Inc v Lansing,* 467 Mich 98, 112 (2002). Because this case is moot, plaintiffs' appeal should be dismissed.

I especially share Justice YOUNG's concern that, because there are no longer any "live" issues between plaintiffs and defendant Merit Energy, this Court will be constrained to consider significant constitutional questions presented by plaintiffs without the benefit of full opposing advocacy by Merit. Merit has already acquiesced to plaintiffs' demands. Accordingly, plaintiffs cannot achieve additional relief against Merit.[6] Therefore, Merit reasonably will be significantly less motivated to expend

---

in *City of Erie*, defendant has an interest in preserving the lower court's decision with regard to these issues.

[5] Unlike Justice YOUNG, I prefer to rest my analysis and conclusions on the strength of my legal reasoning alone. I believe that reasonable people can, in good faith, disagree on the proper interpretation and application of the law without it signifying deleterious motives or a lack of fidelity to the principles of justice and fair advocacy. I thus find it unnecessary, and unbecoming to the office, to attempt to bolster my position by resorting to personal attacks on those who hold opposing views. In my 27 years of service to the people of Michigan as a member of this Court, I have rarely found such methods to improve the level or depth of the Court's discourse. Regrettably, the effect is generally the opposite. I must note, however, that Justice YOUNG's mewling over *stare decisis* is remarkably ironic, given his part in efforts over the past years to dismantle and undo decades of this Court's jurisprudence. See Sedler, Robert A., *The Michigan Supreme Court, Stare Decisis, and Overruling the Overrulings*, Wayne State University Law School Research Paper No. 09-28 (2009). <http://ssrn.com/abstract=1520719> (accessed May 21, 2010).

[6] My concurring colleague concludes that, because Merit *voluntarily* ceased its allegedly illegal conduct, it thus might voluntarily resume the conduct in the future, and therefore this case is

resources to counter plaintiffs' general legal arguments, by which plaintiffs urge us to overturn precedential opinions in unrelated cases.

It is beyond debate that the judicial power to hear a case inheres, in part, in the existence of parties with sufficient interests in a suit to guarantee vigorous advocacy. Although members of this Court disagree about the applicability of the traditional "case and controversy" requirement in Michigan, *Nat'l Wildlife Federation v Cleveland Cliffs Iron Co* itself confirms that we agree about the fundamental need for meaningful advocacy. In *Nat'l Wildlife Federation*, which addressed the judicial power primarily in the context of standing, a majority of the Court explained that the proper exercise of the judicial power requires the existence of a "real dispute," of a "plaintiff who has suffered real harm," and of "genuinely adverse parties." *Nat'l Wildlife Federation v Cleveland Cliffs Iron Co,* 471 Mich 608, 614 (2004).[7] Justice WEAVER, concurring in result, similarly opined that, "[b]efore Michigan courts will hear a case, they consider whether 'a party's interest in the outcome of the litigation . . . will ensure sincere and vigorous advocacy.'" *Id.* at 658 (WEAVER, J., concurring in result only), quoting *House Speaker v State Admin Bd,* 441 Mich 547, 554 (1993); and see *Nat'l Wildlife Federation, supra* at 676 (CAVANAGH, J., concurring in result and concurring in Justice WEAVER's reasoning); *id.* (KELLY, J., concurring in result only and concurring in Justice WEAVER's opinion). The United States Supreme Court expressed the concept well in *Baker v Carr,* 369 US 186, 204; 82 S Ct 691 (1962), where the high Court presented a threshold question with regard to whether a party has standing to appeal, particularly when constitutional questions are at issue: "Have the appellants alleged such a personal stake in the outcome of the controversy as to assure that concrete adverseness which sharpens the presentation of issues upon which the court so largely depends for illumination of difficult constitutional questions?" Because there is no longer a genuine controversy between the parties—in particular, because Merit has no real reason to vigorously defend now that it has ceased the activity of which plaintiffs complained and no further relief against Merit

---

distinguishable from moot cases in which injunctive relief is no longer available to prevent an already *completed*, allegedly harmful action. I disagree that this case is distinguishable for this reason. Rather, Merit has thoroughly documented that it is no longer physically capable of resuming the conduct that plaintiffs sought to prevent, as has been confirmed by the Department of Natural Resources and Environment and Merit's application for Department of Environmental Quality approval of an alternative groundwater discharge plan. If Merit's future alternative plans somehow encroach on the property at issue here, plaintiffs would have new grounds for a separate lawsuit in which they would be free to again challenge the precedent with which they voice their disagreement here.

[7] The majority also concluded that exercising the judicial power requires

> the eschewing of cases that are moot at any stage of their litigation; the ability to issue proper forms of effective relief to a party; the avoidance of political questions or other non-justiciable controversies; the avoidance of unnecessary constitutional issues; and the emphasis upon proscriptive as opposed to prescriptive decision making. [*Id.* at 614-615.]

is available—I conclude that this Court should grant Merit's motion to dismiss the appeal.

YOUNG, J. (*dissenting*).

I dissent. This case is moot. But the majority permits the case to remain on the docket. Why? The answer is simple. The majority desires to make good on the promise that Chief Justice KELLY made to her supporters shortly after the election of Justice HATHAWAY to this Court:

> We the new majority [Chief Justice KELLY and Justices CAVANAGH, WEAVER, and HATHAWAY] will get the ship off the shoals and back on course, and we will undo a great deal of the damage that the Republican-dominated court has done. Not only will we not neglect our duties, we will not sleep on the bench.[8]

The reason why the "new majority" declines to grant defendant Merit Energy's motion to dismiss for mootness is because it disagrees with this Court's decisions in *Michigan Citizens v Nestlé Waters*[9] and *Preserve the Dunes v DEQ*.[10] It now seeks to overrule them despite constitutional mootness principles that deprive this Court of the authority to do so in this appeal. Because this case is moot, it presents no legitimate basis for this Court to exercise the "judicial power" given to it under the Michigan Constitution.

## I. THE FACTS OF THIS CASE

**In a nutshell, this is what this suit is about: Plaintiffs feared damage to their riparian rights if defendant was permitted to complete and use a mile long pipeline in order to discharge a treated effluent into a tributary of a river along which plaintiffs own property. Merit has now abandoned that plan.**

Defendant Merit Energy owns land in Otsego County containing a groundwater contaminant plume. It sought DEQ approval of its corrective action plan to treat the contaminated water and discharge the treated water near Kolke Creek, which flows into the AuSable River. To effect this plan, Merit obtained an easement from the Michigan Department of Natural Resources to construct a 1.3 mile pipeline to carry the treated water over state-owned land covered by the easement. The plaintiffs seek to enjoin Merit

---

[8] She Said, Detroit Free Press, December 10, 2008.

[9] 479 Mich 280 (2007).

[10] 471 Mich 508 (2004).

from carrying out its corrective action plan, alleging violations of their common law riparian rights and the Michigan Environmental Protection Act.[11]

After this Court granted leave, Merit moved to dismiss the appeal because it abandoned its plan to discharge the treated wastewater into Kolke Creek. The plaintiffs do not dispute that Merit has not discharged any treated wastewater into Kolke Creek. Moreover, Merit quitclaimed its interest in the easement back to the Department of Natural Resources and Environment (DNRE) and provided thorough documentation to this Court to prove it did so. This documentation included a copy of the quitclaim deed that conveyed its interest in the easement back to the DNRE. Accordingly, Merit no longer has physical access to Kolke Creek. It cannot violate the MEPA or plaintiffs' common law riparian rights. Further, it offered proof that it filed for a new groundwater discharge permit to achieve its treatment goals by an alternative plan that avoids discharging treated effluent into Kolke Creek. In short, the plaintiffs' common law riparian rights and their rights under the MEPA are secure.

> **Merit has abandoned and deeded over its interest in the property on which it planned to run the pipeline that plaintiffs feared would eventually contaminate the AuSable River and violate their riparian rights. Accordingly, plaintiffs no longer have a viable claim against Merit. In lawyer speak, plaintiffs' claims are now completely "moot."**

## II. MOOTNESS

This Court has the constitutional authority to exercise only the judicial power, not "powers properly belonging to another branch. . . ."[12] This Court has defined the judicial power to include "the existence of a real case or controversy" and "the eschewing of cases that are moot at any stage of their litigation."[13]

The avoidance of deciding moot questions is a firmly established principle of law to which this Court has adhered for more than a century. *Street R Co of E Saginaw v Wildman,* an 1885 case of this Court, is an especially apt application of this Court's longstanding mootness doctrine.[14] In *Street R Co*, the plaintiff railroad sought to enjoin the defendant from moving a building along its railroad tracks "to the great interruption of its business and profits, the serious inconvenience of the public, and the hindrance and delay of the United States mails which it carried. . . ."[15] Shortly after the lower court dismissed the plaintiff's claim, but before the plaintiff appealed to this Court, the

---

[11] MCL 324.1701 et seq.

[12] Const 1963, art 3, § 2.

[13] *Nat'l Wildlife Federation v Cleveland Cliffs Iron Co*, 471 Mich 608, 614 (2004).

[14] *Street R Co of E Saginaw v Wildman*, 58 Mich 286, 286 (1885).

[15] *Id*.

defendant moved the building, thereby negating any ability to prevent the claimed harm or a basis for injunctive relief. On appeal, this Court determined that "[i]f the complainant was ever entitled to the [equitable] relief prayed for, we cannot now make any decree to aid it" because "[w]e can hardly prevent [the defendant] from doing what has already been done."[16]

In this case, the defendant no longer has the physical means of discharging treated water into Kolke Creek, which is the harm that plaintiffs seek to enjoin.[17] This Court simply cannot enjoin a harm that can no longer occur. However, Chief Justice KELLY and Justices CAVANAGH, WEAVER, and HATHAWAY are not concerned about the harm about which plaintiffs have complained because it no longer exists. On the contrary, the majority needs this appeal, now an empty vessel, to attack precedent with which it disagrees.

**Once Merit quitclaimed the easement necessary to build the pipeline, it no longer had the physical ability to contaminate the Kolke or the AuSable in the manner plaintiffs claimed in their suit. As established by Street, it obviously follows for all but Chief Justice KELLY and Justices CAVANAGH, WEAVER, and HATHAWAY that, without the threatened construction of the pipeline, there remains no threatened injury to plaintiffs' riparian rights and certainly none that this Court can remedy.**

---

[16] *Id*. at 287.

[17] The concurrence cites *City of Erie v Pap's AM*, 529 US 277 (2000), to explain why the defendant's voluntary abandonment of its plan should not preclude this Court's review of the case. But the overriding concern present in the U.S. Supreme Court's decision in City of Erie— the possibility that the plaintiff would purchase another property anywhere within the city limits to maintain his victory in the Pennsylvania Supreme Court—is not present in the instant case. Here, the defendant would have to receive another easement on the specific property from its state owner, the Department of Natural Resources and Environment, before the plaintiffs' alleged harm would occur. Such action is exceedingly unlikely, especially in light of the DEQ's admission in its brief supporting dismissal that "there no longer exists the possibility of surface water discharge to Kolke Creek of the AuSable River" and defendant's proof that it gave up all rights and means to access Kolke Creek.

Another distinction between this case and *City of Erie* is that, in *City of Erie*, the defendant city suffered an ongoing injury from the Pennsylvania Supreme Court's decision that the First Amendment barred it from enforcing its nude dancing ordinance, not only against the plaintiff but also against all inhabitants of the city. No such ongoing injury exists here. In particular, the Court of Appeals ruling did not divest the plaintiffs of their riparian rights. Rather, it merely applied the settled precedent of this Court to the facts of the case.

Indeed, plaintiffs do not contend that they have an immediate injury at stake. But they still want this Court to rule on the substantive legal issues – for the benefit of <u>future</u> cases. Again, the *Street R Co* decision provides guidance:

> It was suggested on the hearing that we ought to settle the rights of the parties so that the principle established might be a guide in other cases likely to arise. But courts of equity will not lend their aid by injunction for the enforcement of a right or the prevention of a wrong in the abstract, not connected with any injury or damage to the person seeking relief, nor when such injury or damage can be fully and amply recovered in an action at law. Nor are courts of equity established to decide or declare abstract questions of right for the future guidance of suitors.[18]

The plaintiffs also claim that this case fits into an exception to the mootness doctrine, that "the issue is one of public significance that is likely to recur, yet evade judicial review."[19] Not so. The issues presented here are <u>not</u> the sorts of issues whose transitory nature makes it likely that future litigation would "evade judicial review."[20] To the contrary, any riparian owner aggrieved by the actions or imminently threatened actions of another can seek injunctive or other relief.

Although the concurrence posits that the plaintiffs' riparian rights are endangered by the Court of Appeals decision, such decision merely applied existing Michigan law. More important, however, is the fact that the plaintiffs' riparian rights can no longer be invaded by defendant, which has abandoned the only means by which it might have injured plaintiffs' rights. Thus, the real reason this case is not being treated as moot is because the plaintiffs, like Chief Justice KELLY and Justices CAVANAGH, WEAVER, and HATHAWAY, wish to challenge whether this Court correctly decided two previous cases, *Michigan Citizens v Nestle Waters* and *Preserve the Dunes v DEQ*. A dismissal, of course, will preclude them from doing so.

The concurrence claims that the "defendant prevailed on whether plaintiffs may challenge the DEQ's decision to issue or deny a permit and whether the state could convey an easement granting riparian rights to state-owned land,"[21] and that not to review such issues implicates "this Court's interest in preventing defendant from insulating a favorable decision from review…."[22] These claims are red herrings.

First, the Court of Appeals merely applied this Court's existing precedent in determining that the issuance of a permit is not "conduct" that "has polluted, impaired, or destroyed or is likely to pollute, impair, or destroy the air, water, or other natural

---

[18] *Id*.

[19] *Federated Publications, Inc v Lansing*, 467 Mich 98, 112 (2002).

[20] See, e.g., *Socialist Workers Party v Secretary of State*, 412 Mich 571, 582 n 11 (1982).

[21] *Ante*, at ___ n __.

[22] *Ante*, at ___.

resources," within the meaning of the Michigan Environmental Protection Act.[23] There is every reason to assume that someone in the future who actually has a justiciable claim will challenge the correctness of this Court's jurisprudence, if this Court had properly dismissed the instant case.

Second, the Court of Appeals' determination that the state had the authority, as a riparian property owner, to convey an easement to the defendant is moot now that the underlying easement no longer exists. If plaintiffs' or the majority's primary concern is the published Court of Appeals ruling permitting the state to convey an easement rooted in its riparian rights, this Court could simply vacate that portion of the Court of Appeals opinion. We have done precisely this in the past when denying leave or disposing of a case on grounds of mootness, most recently in *Gadigian v City of Taylor*[24] and *Howe v Boucree*.[25] **That the new majority has declined simply to correct what it believes is erroneous in the Court of Appeals decision is further indication of its desire, at any cost, to reach and overturn cases with which it disagrees**.

The mootness doctrine partly stems from the necessity of an adversarial process to a society governed under the rule of law. As it stands now, Merit has no stake in the future outcome of this case, and thus has no remaining interest to pursue the appeal vigorously. Why would Merit pay the expense of contesting in the Supreme Court a matter in which it has already conceded by its actions? By rights, having abandoned the pipeline, Merit should also abandon this case even if a majority insists on it going forward. Accordingly, I am greatly concerned by the resulting total collapse of the adversarial process in this case—having no party vigorously to argue in defense of the cases with which the plaintiffs and Chief Justice KELLY and Justices CAVANAGH, WEAVER, and HATHAWAY intend to overturn. For those who wish to overturn cases decided by "the Republican-dominated Court," it is useful to have no one with a serious interest in defending them.

> **Chief Justice KELLY and Justices CAVANAGH, WEAVER, and HATHAWAY have fully advertised their interest in overturning these precedents in the order granting leave in this appeal. Their decision to persist in this appeal despite its patent mootness shows that they are prepared to accomplish its stated objective of "undoing" the precedent of this Court without even waiting for a plaintiff who has a live claim and parties who will participate in a meaningful adversarial process.**

---

[23] MCL 324.1703(1); *Preserve the Dunes v DEQ*, 471 Mich 511 (2004).

[24] 486 Mich 869 (2010) (affirming the Court of Appeals result on different grounds and vacating that court's unnecessary analysis as dictum).

[25] 483 Mich 907 (2009) (denying leave to appeal but vacating moot portions of the Court of Appeals opinion).

In short, there is not a clearer instance of mootness than this case: **the action originally challenged by plaintiffs can no longer be physically accomplished by the defendant.** However, the majority's decision to permit the appeal to proceed despite the absence of a live controversy demonstrates that it has other fish to fry; irrespective whether the case before it presents a legitimate vehicle for it to accomplish its goal, it will entertain plaintiffs' argument in favor of overturning yet another precedent with which it disagrees. The fact that the members of the majority have for 10 years been stout supporters of stare decisis illustrates how "situational" was their prior claimed fidelity to precedent.[26]

The concurring justice claims that it is "remarkably ironic" that I raise the majority's selective interest in respecting precedent. However, my position on stare decisis has not changed,[27] and the concurring justice attempts to shift focus to me in order

---

[26] See, e.g., *Pohutski v City of Allen Park*, 465 Mich 675, 712 (2002) (KELLY, J., dissenting) ("[I]f each successive Court, believing its reading is correct and past readings wrong, rejects precedent, then the law will fluctuate from year to year, rendering our jurisprudence dangerously unstable."); *People v Hawkins*, 468 Mich 488, 517-518 (2003) (CAVANAGH, J., dissenting) ("We have overruled our precedents when the intervening development of the law has 'removed or weakened the conceptual underpinnings from the prior decision, or where the later law has rendered the decision irreconcilable with competing legal doctrines or policies.' . . . Absent those changes or compelling evidence bearing on Congress' original intent . . . our system demands that we adhere to our prior interpretations of statutes."), quoting *Patterson v McLean Credit Union*, 491 US 164, 173; 109 S Ct 2363; 105 L Ed 2d 132 (1989) and *Neal v United States*, 516 US 284, 295; 116 S Ct 763; 133 L Ed 2d 709 (1996); *Rowland v Washtenaw Co Rd Comm*, 477 Mich 197, 278 (CAVANAGH, J., dissenting) ("'Under the doctrine of stare decisis, principles of law deliberately examined and decided by a court of competent jurisdiction become precedent which should not be lightly departed.'"), quoting *People v Jamieson*, 436 Mich 61, 79 (1990); *Devillers v Auto Club Ins Ass'n*, 473 Mich 562, 622 (2005) (WEAVER, J., dissenting) ("Correction for correction's sake does not make sense. The case has not been made why the Court should not adhere to the doctrine of stare decisis in this case."); Todd C. Berg, *Hathaway attacks*, Michigan Lawyers Weekly, October 27, 2008 ("'People need to know what the law is,' Hathaway said. 'I believe in stare decisis. Something must be drastically wrong for the court to overrule.'"); *Lawyers' election guide: Judge Diane Marie Hathaway*, Michigan Lawyers Weekly, October 30, 2006, in which Justice HATHAWAY, then running for a position on the Court of Appeals, was quoted as saying: "[t]oo many appellate decisions are being decided by judicial activists who are overturning precedent."

[27] I signed *Robinson v City of Lansing*, 462 Mich 439 (2000), and continue to subscribe to its principles concerning stare decisis. See also *Rowland v Washtenaw Co Rd Comm'n*, 477 Mich 197, 225 (2007) (MARKMAN, J., concurring) (stating that cases that the Court's previous philosophical majority overruled were ones "in which the clear language of the law was misconstrued, or in which the policy preferences of the justices were substituted for those of the lawmaker"). What principles guide the new majority when it overrules the precedent of this Court? The new majority's true perspective on stare decisis is clearly evident in their actions in this case: The majority here reaches outside of its judicial powers to overturn precedent with which it disagrees.

to avoid confronting his own inconsistency. The public should understand when Justices' positions on important matters shift. And that is the focus of this dissent: when the concurring justice was in the minority, he liked stare decisis a lot; now that he is in the majority, it is not an issue. That is the "irony" the public should understand.

Having no substantive response to my noting the reversal of his reverence for precedent, the concurring justice has entered into the explicitly partisan realm, referencing an article by a Wayne State University law professor. Not everything written by a law professor is unbiased, nor is this particular law professor. In fact, this professor's ubiquitous appearances on the Democratic Party web site attacking me and urging my political defeat demonstrates that he has a dog in the November hunt. So does the concurring justice.

## III. CONCLUSION

The fact that the "new majority" refuses to dismiss this case as moot is noteworthy but hardly surprising in light of Chief Justice KELLY's pledge to her supporters to "undo … the damage that the Republican-dominated court has done." Yet in *People v Richmond*, Justice CAVANAGH, Chief Justice KELLY, and Justice HATHAWAY have all just recently pronounced that "a court cannot 'tender advice' on matters that are no longer in litigation."[28] Their failure to apply this principle to this case reflects a fickleness to consistent rules of law – even rules to which they claim to subscribe. They and Justice WEAVER are eager to oblige the plaintiffs' request to undo this Court's precedents despite the mootness of plaintiffs' claims.

**The decision of Chief Justice KELLY and Justices CAVANAGH, WEAVER, and HATHAWAY to persist in this appeal despite its patent mootness shows that the majority is prepared to accomplish its stated objective of "undoing" precedent of the last decade <u>by any means necessary</u>.**

---

[28] *People v Richmond*, 486 Mich 29 (2010), quoting *Anway v Grand Rapids R Co*, 211 Mich 592, 611-612 (1920). I continue to adhere to the substantive position stated in Justice CORRIGAN's dissent, which I joined.

Thus, not only have Chief Justice KELLY and Justices CAVANAGH, WEAVER, and HATHAWAY determined to reconsider two cases that were decided just three and six years ago, they are also determined to do so in defiance of our constitutional limitations on judicial power. Because I have sworn to uphold the constitution of this state, I must emphatically dissent from the determination of Chief Justice KELLY and Justices CAVANAGH, WEAVER, and HATHAWAY to reach non-justiciable questions of law by refusing to dismiss this moot appeal.

MARKMAN, J. (*dissenting*).

I concur fully in Justice YOUNG's legal analysis concerning the mootness of this case, and, therefore, join in dissenting from the order denying defendant's motion to dismiss. As this Court just recently explained in *People v Richmond,* 486 Mich 29 (2010), "[w]hether a case is moot is a threshold issue that a court addresses before it reaches the substantive issues of the case itself." And as Justice YOUNG has clearly demonstrated, plaintiffs' claims became moot when defendant deeded over its interest in the easement on which it planned to run a pipeline back to the Department of Natural Resources. Simply put, without a remaining property interest, it is impossible for defendant to harm plaintiffs' riparian rights, or their other rights under the Environmental Protection Act. With this uncontroverted evidence, defendant carried its burden of demonstrating that "there is no reasonable expectation that the wrong will be repeated." *United States v W T Grant Co,* 345 US 629, 633 (1953).[29] By allowing this appeal to proceed, the Court can only "reach moot questions or declare principles or rules of law that have no practical legal effect in the case before [it]." *Federated Publications, Inc v City of Lansing*, 467 Mich 98, 112 (2002). To do so is directly contrary to *Richmond*, a decision of five weeks vintage.

---

[29] The concurrence begs the question of what evidence, in its view, *would* ever be sufficient for a defendant to show that "there is no reasonable expectation that the wrong will be repeated." *W T Grant Co,* 345 US at 633. If (a) defendant's quit-claim deed conveying its property interest back to the state; (b) documentation establishing that defendant has received a discharge permit from the DEQ to dispose of the water by alternative means; and (c) DEQ's admission that "there no longer exists the possibility of surface water discharge to Kolke Creek or the AuSable River" are insufficient, it is difficult to imagine how defendant could *ever* demonstrate to the majority's satisfaction that the alleged wrong will not arise again.



I, Corbin R. Davis, Clerk of the Michigan Supreme Court, certify that the foregoing is a true and complete copy of the order entered at the direction of the Court.

June 18, 2010

y0615

Clerk