*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit I.O.P. 32.1(b)
File Name: 13a0254a.06

# UNITED STATES COURT OF APPEALS

### FOR THE SIXTH CIRCUIT

———————————

UNITED STATES OF AMERICA,
　　　　　　　　*Plaintiff-Appellee,*

　　　　*v.*　　　　　　　　　　　　　　No. xx-xxxx

JOHN DOE,
　　　　　　　　*Defendant-Appellant.*

Appeal from the United States District Court
for the Northern District of Ohio at Youngstown.
No. xx-cr-xxxxx—Christopher A. Boyko, District Judge.

Decided and Filed: August 27, 2013

Before: KEITH, COLE, and ROGERS, Circuit Judges.

———————————

### COUNSEL

**ON BRIEF:** Melissa M. Salinas, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Cleveland, Ohio, for Appellant. Linda H. Barr, UNITED STATES ATTORNEY'S OFFICE, Akron, Ohio, for Appellee.

　　　　KEITH, J., delivered the opinion of the court, in which, COLE, J., concurred in part and in the judgment. COLE, J. (pp. 15–16), delivered a separate opinion concurring in part and in the judgment. ROGERS, J. (pp. 17–19), delivered a separate dissenting opinion.

———————————

### AMENDED OPINION

———————————

　　　　DAMON J. KEITH, Circuit Judge. In 2010, the Fair Sentencing Act ("FSA") was passed "to restore fairness to Federal cocaine sentencing." Pub. L. 111-220, 124 Stat. 2372 (2010) (to be codified as amended in scattered sections of Title 21). The passage of the FSA was a monumental and commendable first step toward eliminating racial disparities in cocaine sentencing. Nevertheless, much work remains before

1

fairness and integrity are fully restored to Federal cocaine sentencing, as evidenced in this case before us.

Defendant is currently incarcerated pursuant to a penalty that has been discredited not only by public opinion, but by Congress, the Supreme Court, and the United States Sentencing Commission. Prisoner seeks reduction of a sentence imposed on him for a violation involving cocaine base. Despite the passage of the FSA, the district court found that Prisoner and other similarly situated defendants are ineligible to have their unfair sentences reconsidered. This case requires us to interpret the U.S. Sentencing Guidelines Manual (hereinafter "Guidelines" or "U.S.S.G.") and cocaine sentencing statutes, which overlap at several relevant points. Because we must give effect to Congress's unambiguously expressed intent that the amended Guidelines achieve consistency, we vacate the district court's order and remand for further proceedings consistent with this opinion.[1]

## BACKGROUND

Powder cocaine and cocaine base are two different forms of the same drug, but have been subject to different penalties for the same drug quantities. The FSA reduced from 100:1 to 18:1 the ratio between the quantities of powder cocaine versus cocaine base that trigger the same statutory minimum sentences ("cocaine ratios"). *Dorsey v. United States*, 132 S. Ct. 2321, 2329 (2012). "[T]he severity of the old guidelines has been criticized by nearly every stakeholder in the criminal justice system," including Congress. *United States v. Jackson*, 678 F.3d 442, 444 (6th Cir. 2012). Even before the FSA was enacted, the United States Supreme Court noted that the old 100:1 cocaine ratios "'foster[ed] disrespect for and lack of confidence in the criminal justice system' because of a 'widely-held perception' that it 'promotes unwarranted disparity based on race.'" *Kimbrough v. United States*, 552 U.S. 85, 98 (2007) (quoting United States Sentencing Commission, Report to Congress: Cocaine and Federal Sentencing Policy 103 (May 2002)). Approximately eighty-five percent of defendants convicted of cocaine

---

[1]The opinion in this case is sealed. This redacted version is being published.

base offenses in federal court are African-American. *Id.* Defendant was sentenced pursuant to the old ratios.

*Defendant's Sentencing*

The facts of this case are undisputed. In 2006, Defendant pleaded guilty to two counts of distribution of over fifty grams of cocaine base in violation of 21 U.S.C. § 841(a)(1)—the controlled substance criminal statute. Defendant's plea agreement specified that his offense involved 109 grams of cocaine base. The plea agreement stated, "The parties agree to recommend that the Court impose a sentence within the range determined pursuant to the advisory Sentencing Guidelines in accordance with the computations and stipulations set forth in this agreement." The district court accepted the parties' plea agreement. At Defendant's original sentencing, the district court was bound by the pre-FSA statutory minimums. In 2006, pursuant to the sentencing provisions in 21 U.S.C. § 841(b)(1)(A)(iii) and 21 U.S.C. § 851, Defendant was subject to a statutory minimum sentence of 240 months of imprisonment.[2] However, 240 months was only a presumptive statutory minimum because the Government moved for a downward departure in return for Defendant's substantial assistance to its investigation, and the district court granted further reductions for Defendant's acceptance of responsibility and timely indication of his intent to plead guilty. After the downward departure and reductions, the Guidelines yielded an advisory range of 130 to 162 months of imprisonment. Ultimately, the district court sentenced Defendant to 130 months of imprisonment, the low end of the advisory range.

*The Fair Sentencing Act*

Four years later, in 2010, the FSA was enacted. The FSA amended the cocaine base sentencing statute—21 U.S.C. § 841(b)(1). Before the FSA, the cocaine base sentencing statute prescribed a ten-year statutory minimum sentence for offenses involving fifty or more grams of cocaine base. 21 U.S.C. § 841(b)(1)(A)(iii) (2006). Since the FSA was enacted, the cocaine base sentencing statute requires an offense to

---

[2] Title 21 U.S.C. § 851 enhanced the 120-month statutory minimum in 21 U.S.C. § 841(b)(1)(A)(iii) to a 240-month minimum due to Defendant's prior convictions.

involve at least 280 grams of cocaine base in order to trigger a ten-year statutory minimum sentence. 21 U.S.C. § 841(b)(1)(A)(iii) (2012). Therefore, under the new minimums promulgated by the FSA, an offense involving 109 grams of cocaine base only triggers a five-year presumptive statutory minimum. 21 U.S.C. § 841(b)(1)(B)(iii) (2012). The statutory minimum in 21 U.S.C. § 841(b)(1) is only a presumptive starting point and it is still subject to various adjustments in a district court's calculation of a defendant's final sentence.

*Amendment 750*

The Guidelines's penalties for cocaine base offenses were also amended as a result of the FSA. In the FSA, Congress gave the United States Sentencing Commission emergency authority to amend the Guidelines. § 8, 124 Stat. at 2374. Congress instructed the Commission that it "shall . . . make such conforming amendments to the Federal sentencing guidelines as the Commission determines necessary to achieve consistency with other guideline provisions and applicable law." *Id.*

As a result of Congress's directive, the Sentencing Commission promulgated Amendment 750 to the Guidelines. Amendment 750 revised the drug quantity table in § 2D1.1(c) of the Guidelines. Similar to the changes in the cocaine base sentencing statute, Amendment 750 increased the cocaine base quantities required to trigger higher base offense levels. U.S.S.G. app. C, amend. 750 (2011). Before Amendment 750 revised the § 2D1.1(c) drug quantity table, an offense involving 109 grams of cocaine base corresponded to a base offense level of 32. After Amendment 750, an offense involving 109 grams of cocaine base corresponds to a base offense level of 26.

The sentencing table in chapter 5, part A of the Guidelines determines a defendant's advisory range based on criminal history category and Total Offense Level. The § 2D1.1(c) drug quantity table determines a defendant's base offense level depending on the amount of drugs involved in the offense. Like a presumptive statutory minimum, a base offense level is similarly subject to various adjustments in a district court's calculation of a defendant's Total Offense Level.

*Defendant's Procedural History*

The FSA substantially reduced both the statutory minimum sentence and advisory range applicable to offenses involving 109 grams of cocaine base. Following the district court's original sentencing formula, but using the new statutory minimums and amended Guidelines, Defendant would be subject to a sentence of seventy months of imprisonment instead of 130 months.

Consequently, in 2012, Defendant moved for a sentence reduction pursuant to 18 U.S.C. § 3582(c)(2). Section 3582(c)(2) allows a district court to reduce a term of imprisonment that has already been imposed under certain conditions, which are elaborated below. The district court denied Defendant's motion. The district court reasoned that he was still subject to the pre-FSA statutory minimums and therefore Amendment 750 had not lowered his applicable guideline range. The district court found that Defendant was ineligible for sentence reduction and denied his motion for lack of jurisdiction.

On appeal, Defendant argues that the statutory minimums as promulgated by the FSA apply as the operative minimums in his sentence reduction calculation under § 1B1.10(b)(1), so that he is eligible for sentence reduction under 18 U.S.C. § 3582(c)(2). The Government argues that the statutory minimums that were in force in 2006 are the operative minimums in Defendant's § 1B1.10(b)(1) sentence reduction calculation, so that he is ineligible for sentence reduction under 18 U.S.C. § 3582(c)(2).

**ANALYSIS**

We review a district court's denial of a motion to modify a sentence under 18 U.S.C. § 3582(c)(2) for an abuse of discretion. *United States v. Carter*, 500 F.3d 486, 490 (6th Cir. 2007). When a district court finds that a defendant is ineligible for sentence reduction under 18 U.S.C. § 3582(c)(2), however, we review that decision *de novo*. *United States v. Curry*, 606 F.3d 323, 327 (6th Cir. 2010).

Generally, a district court may not reduce a defendant's sentence after imposing it. 18 U.S.C. § 3582(c). There is an exception, however, whereby a district court has

jurisdiction to reduce a defendant's sentence if: (1) the original sentence was "based on" an advisory range; (2) the Sentencing Commission subsequently lowered the advisory range upon which the defendant's original sentence was based; and (3) the sentence reduction is consistent with the Sentencing Commission's policy statement in § 1B1.10. 18 U.S.C. § 3582(c)(2); U.S.S.G. § 1B1.10(a)(2)(B); *United States v. Hameed*, 614 F.3d 259, 262 (6th Cir. 2010). We must determine whether Defendant satisfies all three of the sentence reduction eligibility requirements.

Defendant satisfies the first sentence reduction eligibility requirement because his sentence was based on the Guidelines. Section 1B1.10(b)(1) of the Guidelines provides the methodology for calculating sentence reductions for purposes of a motion under 18 U.S.C. § 3582(c)(2). Whether Defendant satisfies the second and third sentence reduction eligibility requirements depends upon which statutory minimums are operative in his § 1B1.10(b)(1) sentence reduction calculation. The methodology outlined in § 1B1.10(b)(1) incorporates statutory minimums by reference where, as here, a defendant's original advisory range was reset by a presumptive statutory minimum prior to the consideration of substantial assistance. However, the Guidelines are silent about whether to apply the statutory minimums that were in effect at the time of the original sentencing or the minimums in effect at the time the district court rules on the § 3582(c)(2) motion. For this reason, we look to Congress's intent to determine which minimums figure into Defendant's § 1B1.10(b)(1) calculation.

### *"Based On" an Advisory Range*

Defendant satisfies the first sentence reduction eligibility requirement because his original sentence was based on an advisory range. 18 U.S.C. § 3582(c)(2). To determine whether a sentence was based on an advisory range, we look to "what the district court actually said and did at the original sentencing." *Hameed*, 614 F.3d at 264 (internal quotation marks and citation omitted). Defendants who are sentenced according to plea agreements that calculated an advisory range based on the Guidelines are sentenced based on an advisory range for purposes of § 3582(c)(2) motions. *Freeman v. United States*, 131 S.Ct. 2685, 2693 (2011) (plurality opinion).

Defendant's plea agreement states, "The parties agree to recommend that the Court impose a sentence within the range determined pursuant to the advisory Sentencing Guidelines in accordance with the computations and stipulations set forth in this agreement." During Defendant's sentencing hearing, the district court stated, "The parties agree to recommend that the Court impose a sentence within the range determined pursuant to the advisory sentencing guidelines" and that "the appropriate sentencing range under the guidelines according to the sentencing table is 130 to 162 months." The district court clearly started with the drug quantity table in § 2D1.1 as the dissent concedes. The district court then relied on §§ 3E1.1(a), 3E1.1(b), and 5K1.1 of the Guidelines, which were cited in the plea agreement, to calculate Defendant's advisory range as 130 to 162 months. The district court proceeded to sentence Defendant to 130 months. The district court's imposition of Defendant's sentence pursuant to the plea agreement that derived an advisory range from the Guidelines was, therefore, based on an advisory range. *See Freeman*, 131 S.Ct. at 2691 (holding that a defendant's sentence was based on an advisory range where the plea agreement stated that the defendant "agree[d] to have his sentence determined pursuant to the Sentencing Guidelines" and the district court adopted the plea agreement).

*Lowered Advisory Range*

The second sentence reduction eligibility requirement is that the Sentencing Commission must have lowered the advisory range upon which Defendant's original sentence was based. 18 U.S.C. § 3582(c)(2); U.S.S.G. § 1B1.10(a)(1); *Hameed*, 614 F.3d at 262. To determine whether the Guidelines have lowered a defendant's sentence, the district court is supposed to start with its own original sentencing formula, then swap in the amended Guidelines into that calculation without making any other change. U.S.S.G. § 1B1.10(b)(1).

As the dissent seems to recognize, the district court's first step in Defendant's original sentencing formula was to consult the drug quantity table in § 2D1.1(c) of the Guidelines to find the base offense level associated with a crime involving 109 grams of cocaine base. Therefore, at sentence reduction proceedings, the district court would

take the same first step.  Since Amendment 750 revised the § 2D1.1(c) drug quantity table, an offense involving 109 grams of cocaine base now corresponds to a base offense level of 26.  At the district court's second step in Defendant's original sentencing formula, § 5G1.1 of the Guidelines directed the district court to refer to the statutory minimum sentence required by the cocaine base sentencing statutes—21 U.S.C. § 841(b)(1) and 21 U.S.C. § 851—to see how they adjusted Defendant's offense level.  Therefore, at sentence reduction proceedings, the district court would take the same second step.  The parties agree on the sentence reduction calculation steps up until this point.

However, the parties dispute whether the district court should apply the statutory minimums in 21 U.S.C. § 841(b)(1) and 21 U.S.C § 851 that were in effect at the time of Defendant's original sentencing or the minimums that are in effect at the time the district court rules on the § 3582(c)(2) motion.  Section 5G1.1 is the portion of the Guidelines that builds statutory minimums into applicable guideline ranges.  Section 5G1.1 is silent about which statutory minimums to apply.  In pertinent part, § 5G1.1 states:

> **(b)** Where a statutorily required minimum sentence is greater than the maximum of the applicable guideline range, the statutorily required minimum sentence shall be the guideline sentence.

> > **(c)** In any other case, the sentence may be imposed at any point within the applicable guideline range, provided that the sentence–
> > **(1)** is not greater than the statutorily authorized maximum sentence, and
> > **(2)** is not less than any statutorily required minimum sentence.

The Government argues that the old minimums are operative in Defendant's § 1B1.10(b)(1) sentence reduction calculation and therefore § 5G1.1(b) applies—precluding Defendant from eligibility for a sentence reduction.  Defendant argues, on the other hand, that the new minimums are operative and § 5G1.1(c)(2) applies—allowing a sentence reduction.

The Supreme Court has not addressed this issue. *United States v. Liberse*, 688 F.3d 1198, 1202 (11th Cir. 2012) ("The [Supreme] Court did not decide [in *Dorsey*, 132 S. Ct. 2321] whether the Fair Sentencing Act applies to a defendant, like Liberse, who was sentenced *before* the Act went into effect and who files a § 3582(c)(2) motion to reduce his sentence *after* the Act's effective date." (emphasis in original)). Thus, we look to the words of the statute. "Where Congress had made its intent clear, we must give effect to that intent." *Miller v. French*, 530 U.S. 327, 336 (2000) (internal quotation marks and citation omitted). We agree with Defendant that the new minimums operate in his § 1B1.10(b)(1) calculation because that method gives effect to Congress's intent as unambiguously expressed in the FSA. There, Congress stated that the amended Guidelines ought to "achieve consistency with other guideline provisions and applicable law." § 8, 124 Stat. at 2374.

We begin by highlighting a major flaw in the Government's position. If we accept the Government's interpretation that Defendant is still subject to the old minimums in his § 1B1.10(b)(1) calculation, the amended Guidelines would yield results inconsistent with Congress's intent. Under the Government's interpretation, cocaine-base defendants whose original advisory ranges were slightly above the old statutory floor, but who did not receive substantial assistance downward departures, would be eligible for sentence reductions under § 3582(c)(2). *See United States v. Wren*, 706 F.3d 861, 864 (7th Cir. 2013). However, defendants like Prisoner whose original ranges were at the statutory floor and rendered substantial assistance would not be eligible. This is so because the Government would have us reset their ranges at the presumptive statutory minimums, which the Government further argues are the old ones. Such perverse results are clearly inconsistent with other Guidelines provisions.

Section 1B1.10(b)(1) instructs a district court to plug in the amended Guidelines to its original Guidelines formula and "leave all other guideline application decisions unaffected." *Id.* at 863 (quoting U.S.S.G. § 1B1.10(b)(1)). Section 5G1.1 is not utilized in the original sentencing formulas of defendants whose original advisory ranges were slightly above the statutory floor. Therefore, one of the "unaffected" decisions in these

defendants' § 1B1.10(b)(1) sentence reduction calculations would be not using § 5G1.1—effectively bypassing otherwise applicable statutory floors. *See id.* at 863–64. In this way, these uncooperative defendants are eligible for sentence reductions even when the old minimums are used.

Yet, the Government's interpretation of the Guidelines would exclude Prisoner—a cooperating defendant—from the benefits of sentence reduction simply because his original range prior to departure happened to be the presumptive statutory minimum. *Id.* at 864. Cooperating with authorities is one of the limited ways a defendant can pierce a presumptive statutory minimum. Sentencing statutes and the Guidelines indicate that both Congress and the Sentencing Commission intend to incentivize cooperation with the authorities. *See* 18 U.S.C. § 3553(e); U.S.S.G. §§ 5K1.1, 3E1.1(b) (authorizing sentence reductions for cooperative defendants). The Government's position would exclude Prisoner—a cooperative defendant—from the benefits of lower cocaine penalties, while including uncooperative defendants who committed similar crimes and received greater sentences. There is no indication that the Sentencing Commission or Congress intended to exclude cooperative defendants from the benefits of sentence reductions. Other circuits have recognized this Guidelines issue:

> It is difficult to see why prisoners [whose original sentencing range was at a presumptive statutory minimum] who received a substantial-assistance or safety-valve sentence should be excluded from a retroactive Guideline reduction, while prisoners whose original ranges were just slightly above the statutory floor are eligible for the benefit of the retroactive change.

*Wren*, 706 F.3d at 864. The Government's interpretation of the amended Guidelines would be inconsistent "with other guideline provisions and applicable law," contrary to Congress's unambiguously expressed intent. § 8, 124 Stat. at 2374. Therefore, the Government's position is unavailing.

This brings us back to the old-or-new-minimums question. The Seventh Circuit in *Wren* did not have to answer the question whether the FSA applies in a § 3582(c)(2) proceeding because the defendants in that case had advisory ranges that were above the

statutory floor. Here, on the other hand, Defendant's advisory range was reset by a presumptive statutory minimum in his original sentencing formula prior to departure. Therefore, in this case we must decide which statutory minimums are operative in a § 1B1.10(b)(1) calculation in order to know whether Defendant's advisory range has been lowered by Amendment 750. If the FSA applies in a § 3582(c)(2) proceeding, Defendant would be subject to a ten-year presumptive minimum instead of a twenty-year presumptive minimum in his advisory Guidelines calculation. *See* 21 U.S.C. § 841(b)(1)(B)(iii) (requiring a five-year presumptive minimum for offenses involving more than 28 grams, but less than 280 grams of cocaine base); 21 U.S.C. § 851 (operating to enhance the 60-month statutory minimum in 21 U.S.C. § 841(b)(1)(A)(iii) to a 120-month minimum due to Defendant's prior conviction). Plugging the new statutory minimums and amended Guidelines into Defendant's original sentencing formula would yield a sentence of seventy months of imprisonment instead of 130 months.

For the reasons stated above, we hold that applying the new minimums in Defendant's § 1B1.10(b)(1) calculation is the only way to give effect to Congress's intent to achieve consistency with other Guidelines provisions, especially with regard to which kinds of defendants—cooperative and uncooperative—are eligible for sentence reductions.

The Government attempts to rely on *United States v. Carradine*, 621 F.3d 575 (6th Cir. 2010), and *Dorsey*, 132 S. Ct. 2321, to argue that Defendant is not eligible for a sentence reduction because he was sentenced before the FSA's effective date, which was August 3, 2010. The Government's reliance on *Carradine* and *Dorsey* is misplaced here. *Carradine* and *Dorsey* stand for the proposition that defendants who were sentenced after August 3, 2010, were entitled to be sentenced under the new FSA minimums *at their original sentencing hearings*. *Dorsey*, 132 S. Ct. at 2336; *Carradine*, 621 F.3d at 580. Original sentencing hearings are plenary sentencing proceedings under 18 U.S.C. § 3553 and § 1B1.1. A sentence reduction under 18 U.S.C. § 3582(c)(2) and § 1B1.10 is not a plenary resentencing—it is an exception to the rule that plenary

sentences under § 3553 are final. § 1B1.10(a)(3); *Dillon v. United States*, 130 S. Ct. 2683, 2690 (2010). *Carradine* and *Dorsey* dealt with how statutory minimums apply retroactively to § 3553 plenary sentencing proceedings. *Carradine* and *Dorsey* did not address how statutory minimums operate in § 3582(c)(2) sentence reduction calculations. *See Liberse*, 688 F.3d at 1202 (explaining that the Supreme Court did not decide in *Dorsey* whether the FSA applies to defendants who were sentenced before August 3, 2010, and subsequently file § 3582(c)(2) motions for sentence reduction).[3] In other words, *Dorsey* and *Carradine* dealt with how the FSA applies in an original sentencing calculation under § 1B1.1. Here, we are addressing how the FSA interacts with a § 3582(c)(2) sentence modification calculation under § 1B1.10(b)(1).

*Guidelines Policy Statement*

Defendant satisfies the third and final sentence reduction eligibility requirement because his sentence reduction is consistent with the Sentencing Commission's policy statement in § 1B1.10(a)(2)(B). Amendment 750 revised the § 2D1.1(c) drug quantity table. Defendant's sentence reduction is consistent with the Sentencing Commission's policy statement if Amendment 750 has "the effect of lowering the defendant's applicable guideline range." U.S.S.G. § 1B1.10(a)(2)(B). The Guidelines define "applicable guideline range" as "the guideline range that corresponds to the offense level and criminal history category determined pursuant to § 1B1.1(a), which is determined before consideration of any departure provision in the Guidelines Manual or any variance." U.S.S.G. § 1B1.10 cmt. n.1(a)(A). Defendant's applicable guideline range automatically incorporates the statutory minimums in the cocaine base sentencing statutes—21 U.S.C § 841(b)(1) and 21 U.S.C. § 851—via § 1B1.1(a)(8), which interlocks with § 5G1.1—the section of the Guidelines that incorporates the statutory minimums. Because we decided above that the new minimums are the operative statutory minimums in Defendant's § 1B1.10(b)(1) calculation, Amendment 750 has the

---

[3]We have misapplied the precedent of *Dorsey* in previous cases. *See, e.g.*, *United States v. Hammond*, 712 F.3d 333 (6th Cir. 2013) (relying on *Dorsey* to summarily conclude that the FSA is not "retroactive" to defendants who were sentenced before August 3, 2010). Instead, here we clarify that *Dorsey* only discussed retroactivity of the FSA to § 3553 plenary sentencing hearings, whereas here we are discussing the *prospective* application of the FSA to § 3582(c)(2) sentence modification proceedings. *Dorsey* does not pronounce on the issue presented in this case and the dissent mischaracterizes the precedent here as another type of retroactive application of the FSA.

effect of lowering his applicable guideline range. Therefore, Defendant's sentence reduction is consistent with the Sentencing Commission's policy statement in § 1B1.10(a)(2)(B).

The Government relies on the policy statement in Application note 1(a)(A) to § 1B1.10 of the Guidelines to argue that Defendant remains subject to the minimums that were effective at the time of his original sentencing and therefore is ineligible for sentence reduction under 18 U.S.C. § 3582(c)(2). Application note 1(a)(A) to § 1B1.10 states that a defendant is ineligible for sentence reduction under 18 U.S.C. § 3582(c)(2) where "[Amendment 750] is applicable to the defendant but the amendment does not have the effect of lowering the defendant's applicable guideline range because of the operation of another guideline or statutory provision (e.g., a statutory mandatory minimum term of imprisonment)." Just as in § 5G1.1 of the Guidelines analyzed above, Application note 1(a)(A) to § 1B1.10 of the Guidelines is silent about which statutory minimum is operative in a § 1B1.10(b)(1) calculation. For the reasons elaborated above, the new statutory minimums apply in Defendant's § 1B1.10(b)(1) calculation. Consequently, Amendment 750 does have the effect of lowering Defendant's applicable guideline range. Therefore, the policy statement in § 1B1.10 n.1(a)(A) does not preclude Defendant from eligibility for sentence reduction under 18 U.S.C. § 3582(c)(2).

### *Other FSA Jurisprudence*

Our decision today is in line with the momentum of Supreme Court jurisprudence on the FSA. Each time the Supreme Court has heard cases involving the FSA, it has expanded the class of defendants who are entitled to or eligible for the benefits of lowered penalties under the FSA. *See Dorsey*, 132 S. Ct. at 2336 (holding that "straddle defendants"—who committed crimes before the FSA was enacted but were sentenced after—were entitled to the new minimums at their original sentencing); *Freeman*, 131 S.Ct. at 2693 (holding that a plea agreement did not render a cocaine-base defendant ineligible for sentence reduction under § 3582(c)(2)).

**CONCLUSION**

Our decision does not minimize the enormous difficulty that the Sentencing Commission faces when crafting the U.S. Sentencing Guidelines Manual. Nor do we imply that Congress knowingly designed the old cocaine ratios to have a racially disparate impact. Instead—just as Congress did when it enacted the FSA—today we acknowledge past mistakes in the criminal justice system and endeavor to prevent further injustice.

Defendant is eligible for sentence reduction and the district court has jurisdiction to reduce his sentence according to the instructions in § 1B1.10(b)(1) and using the currently effective statutory minimums in 21 U.S.C. § 841(b)(1). For the foregoing reasons, we **VACATE** and **REMAND** for further proceedings consistent with this opinion.

---

**CONCURRENCE IN PART AND IN THE JUDGMENT**

---

COLE, Circuit Judge, concurring in part and concurring in the judgment. I concur in the result, but write separately because I would resolve this case on narrower grounds.

Let me begin by noting that I agree with the lead opinion on a major premise: the Prisoner's sentence was "based on" a subsequently lowered guidelines range rather than a statutory mandatory minimum. The record reveals that the crack-cocaine guidelines were "a relevant part of the analytic framework the [district court] used to determine" the extent of the substantial-assistance departure. *See Freeman v. United States*, 131 S. Ct. 2685, 2692-93 (2011) (plurality opinion). Indeed, it is possible to draw a line from the Prisoner's final sentence back to those guidelines in light of the pierced mandatory minimum. I diverge with the lead opinion, however, on how far we go from there.

I would look no further than the Prisoner's substantial assistance. In my view, this additional variable makes all the difference—and it sets our case apart from *United States v. Hammond*, 712 F.3d 333 (6th Cir. 2013). Under *Hammond*, a defendant facing a mandatory minimum term is ineligible for a sentence reduction because the mandatory minimum trumps the original guidelines range, which prevents Amendment 750 from having "the effect of lowering" the defendant's sentence. *Id.* at 335-36; *see* U.S.S.G. §§ 1B1.10(a)(2)(B), 1B1.10 cmt. 1(A). But the Prisoner is not facing a mandatory minimum term. Though presumptively subject to one, he received a lower sentence pursuant to the government's substantial-assistance motion. *See* 18 U.S.C. § 3553(e); U.S.S.G. § 5K1.1. This motion effectively "waived" the mandatory minimum and permitted the district court to impose a sentence based on his otherwise-applicable guidelines range. *See* U.S.S.G. § 2D1.1 cmt. 23. Without a mandatory minimum at work, nothing prevents Amendment 750 from having "the effect of lowering" the sentence the Prisoner did receive. Thus, I would hold only that a crack offender who is otherwise subject to a mandatory minimum but receives a lower sentence because he

rendered substantial assistance to the government remains eligible for a sentence reduction under § 3582(c)(2).  I follow at least two of our sister circuits in adopting this view.  *See In re Sealed Case*, — F.3d —,  2013 WL 3305706 (D.C. Cir. July 2, 2013); *United States v. Savani*, — F.3d —, 2013 WL 2462941 (3d Cir. Jun. 10, 2013).

Resolving our case on the foregoing grounds obviates the need to delve any further into the controversy surrounding the retroactive application of the Fair Sentencing Act.  Had the Prisoner not received a downward departure for substantial assistance, his sentence clearly would have been "based on" the mandatory minimum rather than the crack-cocaine guidelines, and the old-or-new minimums question would have become unavoidable.  This, of course, is a profoundly difficult and divisive question.  It is also one we are set to answer soon enough sitting as an en banc court.  I believe it is best to wait until then.

————————

**DISSENT**

————————

ROGERS, J., Circuit Judge, dissenting.  Though it is with some regret, I am compelled to dissent.

The lead opinion's analysis has the same effect as our recently-vacated opinion in *United States v. Blewett*, 719 F.3d 482 (6th Cir. 2013), although for quite different reasons.  Under both analyses, any sentence governed by a statutory minimum changed by the Fair Sentencing Act (FSA), no matter how far back, could be the subject of a § 3582 motion.  Indeed, our upcoming en banc consideration of *Blewett* could be resolved in the alternative on the basis of the lead opinion's reasoning, if accepted by the en banc court.

In the meantime, however, we are bound by this court's published panel precedent in *United States v. Hammond*, 712 F.3d 333 (6th Cir. 2013).  In *Hammond*, this court in a § 3582 reduction case flatly held that "the FSA is not retroactive to defendants like Hammond . . . who were originally sentenced before its effective date." *Id.* at 336.   The lead opinion's analysis in the instant case is unfortunately squarely foreclosed by the holding in *Hammond*, which is a binding precedent.  No reason is given for why our panel can overrule *Hammond.*

It cannot be argued that *Hammond* is distinguishable because Prisoner received a substantial-assistance departure while Hammond did not.  This is because Prisoner's substantial-assistance departure was in no respect affected by anything changed by the FSA.  The only way in which the FSA arguably affects Prisoner's sentence is in the calculation of the sentence prior to the application of the departure, on the theory that the FSA would no longer apply the statutory minimum that drove the pre-departure guideline range.

Prisoner pled guilty to possessing 109 grams of cocaine base, which under the crack-cocaine guidelines at § 2D1.1 of the 2006 Guidelines produced an offense level

of 32. This offense level was reduced by 3 to account for Prisoner's acceptance of responsibility to produce a revised offense level of 29. This revised offense level combined with his criminal history category of V to produce a guideline range of 140 to 175 months of imprisonment. Under pre-FSA 21 U.S.C. § 841, Prisoner was subject to a statutory minimum of 240 months' imprisonment. The court granted the Government's motion for a substantial-assistance reduction. It appears from the Presentence Investigation Report and the sentencing transcript that the court quantified the value of Prisoner's assistance by granting a 2-level departure from offense level 33, the first offense level that intersects with Prisoner's statutory minimum and criminal history category. The court then granted a further 3-level reduction to account for Prisoner's acceptance of responsibility, producing a final offense level of 28 (33 -2 -3). This produced a guidelines range of 130 to 162 months, and the district court sentenced Prisoner to the bottom of this range: 130 months. Once the district court increased Prisoner's offense level to account for the statutory minimum, the district court never looked back at the offense level of 29 and range of 140 to 175 months that resulted from the crack-cocaine guidelines. Accordingly, the drug tables had no apparent impact on Prisoner's sentence, and he was not sentenced "based on" an amended guidelines range, apart from the original determination of the pre-departure range based on the pre-FSA statutory minimum—the issue that *Hammond* resolves against him.

The analysis of the concurrence is also unfortunately foreclosed by binding precedent. After the departure, the district court in no way referred to or relied on portions of the Guidelines affected by the FSA. Therefore, under Justice Sotomayor's controlling approach from *Freeman*, the "based on" requirement was not satisfied. *See Freeman v. United States*, 131 S. Ct. 2685, 2695 (2011) (Sotomayor, J., concurring); *see also United States v. Thompson*, 714 F.3d 946, 949 (6th Cir. 2013) ("Justice Sotomayor's concurrence constitutes the applicable holding . . . ."). As we said in *Thompson*, "[c]ertainly, the district court based Thompson's sentence on some part of the guidelines; the issue . . . is whether such sentence was based *on the crack cocaine guidelines* and whether Amendment 750 would have the effect of lowering his applicable guideline range." 714 F.3d at 949. The concurrence suggests that after the

departure in Prisoner's case, the district court "impose[d] a sentence based on his otherwise-applicable guidelines range." *Supra*, at 15. But, as described above, his otherwise-applicable guidelines range was 140 to 175 months, and the district court used a range of 130 to 162 months to determine Prisoner's sentence. The range that the district court used was disconnected from the crack-cocaine guidelines, so Prisoner's sentence was not "based on" a guidelines range that has been amended.